**BERNARD SCREEN PRINTING CORPORATION, Plaintiff-Appellant,**

v.

**MEYER LINE, Defendant,**

and

**Universal Terminal & Stevedoring Corporation, Defendant-Appellee.**

**No. 265, Docket 71-1764.**

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1971.

Decided July 14, 1972.

---

3. Brown v. Board of Education of Topeka, Kansas (1954) 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed 873.

Martin B. Mulroy, Peter W. Flanagan, Thomas D. Toy, Hill, Rivkins, Warburton, McGowan & Carey, New York City, for plaintiff-appellant.

James M. Leonard, Albert S. Commette, Brown, Quencer & Commette, New York City, for defendant-appellee.

Before LUMBARD, WATERMAN and FEINBERG, Circuit Judges.

### PER CURIAM:

We affirm the judgment order entered below limiting the liability of defendant-appellee (Universal), the negligent stevedore, to $500.00. Reference is had to the lower court opinion, reported at 328 F.Supp. 288 (S.D.N.Y.1971) for exposition of the uncontroverted and conceded facts.

The provisions of Meyer Line's bill of lading, totally drafted by it, include clause 1(J):

> The contract evidenced hereby is between the shipper and the owner or demise charterer of the ship designated to carry the goods. It is understood and agreed that, other than said shipowner or demise charterer, *no person, firm or corporation or other legal entity whatsoever (including the master, officer and crew of the vessel and all agents and independent contractors) is, or shall be deemed to be, liable to the shipper or consignee as carrier, bailee or otherwise howsoever in contract or in tort.* If, however, it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility to the shipper or consignee, all defences (including all limitations of said exonerations from liability) provided to said shipowner or demise charterer by law or by terms hereof shall be available to such other . . . . (Emphasis supplied).

██ This provision gives to all "legal entities" reasonably comprehended within its language, and, specifically to "independent contractors" such as the stevedore here, the benefit which the carrier and the ship have under COGSA to limit liability to a maximum of $500 per unit "for any loss or damage to or in connection with the transportation of

goods" unless the goods are shipped pursuant to a specific declaration of nature or value, under an adjusted rate. 46 U.S.C. § 1304(5).

■ Obviously such a clause as 1(J), which limits by contract one's recourse to the courts to pursue common law rights of action, must be looked at with distrust; and, inasmuch as the clause is drawn by the carrier and the shipper is, for all practical purposes, completely in the carrier's power, the clause, obviously, should be strictly construed against the carrier and any person benefitted thereby.[1] However, in Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), the Supreme Court, while unanimously denying to a negligent stevedore the classification of a "carrier" under 46 U.S.C. § 1301(a), unanimously stated:

> Looking to the limitation-of-liability provisions of the bill of lading, we see that they, like § 1304(5) of the Act and its legislative history, do not advert to stevedores or agents. Instead they deal only with the "Carrier's liability" to the shippers. They say that "the Carrier's liability, if any, shall be determined on the basis of $500 per package." There is, thus, nothing in those provisions to indicate that the contracting parties intended to limit the liability of stevedores or other agents of the carrier for damages caused by their negligence. If such had been a purpose of the contracting

parties it must be presumed that they would in some way have expressed it in the contract. Since they did not do so, it follows that the provisions of the bill of lading did "not cut off [respondent's] remedy against the agent that did the wrongful act." Sloan Shipyards Corporation v. United States Shipping Board Emergency Fleet Corporation, 258 U.S. 549, 568, 42 S.Ct. 386, 388, 66 L.Ed. 762.

We therefore conclude that there is nothing in the provisions, legislative history and environment of the Act, or in the limitation-of-liability provisions of the bill of lading, to indicate any intention, of Congress by the Act, *or of the contracting parties by the bill of lading, to limit the liability of negligent agents of the carrier.* (Emphasis supplied). Id. at 302–303, 79 S. Ct. at 769.

■ This language has prompted a belief that a cargo-carrier and a cargo-owner may contractually extend to a stevedore the benefit enjoyed by carriers under COGSA's $500 limitation on damages, and we consider ourselves bound by a previous decision of this court permitting parties to do precisely that. In language unmistakably clear, Judge Bonsal, relying upon *Herd*, held in Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76 (S.D.N.Y.1967), that a negligent stevedore was entitled to the benefit of the $500 limitation of liability when the applicable bill of lading contained language set forth in the margin.[2] This

---

1. In Robert C. Herd & Co. v. Krawill Machinery Corp., *infra*, the Court, 359 U.S. at 305, 79 S.Ct. at 771, stated:

   Similarly, contracts purporting to grant immunity from, or limitation of, liability must be strictly construed and limited to intended beneficiaries, for they "are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties." Boston Metals Co. v. The Winding Gulf, 349 U.S. 122, 123–124, 75 S.Ct. 649, 650, 99 L.Ed. 933 (concurring opinion).

Appellant contends that the Meyer Line bill of lading lacks the required "clarity of the language used." However, we agree with the court below that Universal, which independently contracted by separate contract with Meyer Line to discharge cargo from the S.S. Havlom, was indeed an "independent contractor," and hence comprehended within the language used in clause 1(J).

2. In Carle & Montanari v. American Export Isbrandtsen Lines the carrier's bill of lading read:

   1. (a) . . . The terms of this bill of lading constitute the contract of carriage, which is between the Ship-

court affirmed, 386 F.2d 839 (2 Cir. 1967) "on the opinion of Judge Bonsal" and the Supreme Court denied certiorari, 390 U.S. 1013, 88 S.Ct. 1263, 20 L. Ed.2d 162 (1968).

Affirmed.

per, Consignee and owner of the goods, and the owner or demise charterer of the vessel designated to carry the goods. It is understood and agreed that, other than said shipowner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the Master, officers and crew of the vessel, *all agents and all stevedores and other independent contractors whatsoever*) is, or shall be deemed to be liable with respect to the goods as carrier, bailee or otherwise howsoever, in contract or in tort. If, however, it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility with respect thereto, all limitations of and exonerations from liability provided by law or by the terms hereof shall be available to such other. In contracting for the foregoing exemptions, limitations and exonerations from liability, the Carrier is acting as agent and trustee for the other above mentioned. (Emphasis supplied). 275 F. Supp. 76, 77–78.

Appellant seeks to avoid our holding in that case by pointing out that the language "and all stevedores, and other independent contractors" is contained in that bill of lading, whereas in the bill of lading before us only the phrase "independent contractors" is used. We agree with the lower court's disposition of this contention, 328 F.Supp. at 290. Here it is clear that the inclusive term "independent contractors" includes Universal.