**TESSLER BROTHERS (B.C.) LTD.,**
**Plaintiff-Appellant,**

v.

**ITALPACIFIC LINE and Matson Terminals, Inc., Defendants-Appellees.**

No. 71-3071.

United States Court of Appeals,
Ninth Circuit.

March 20, 1974.

Rehearing Denied May 28, 1974.

John E. Droeger (argued), Hall, Henry, Oliver & McReavy, San Francisco, Cal., for plaintiff-appellant.

Kelly Wooster (argued), J. Stewart Harrison, Robert C. Boehm, Brobeck, Phleger & Harrison, San Francisco, Cal., D. Thomas McCune, Lillick, McHose, Wheat, Adams & Charles, San Francisco, Cal., for defendants-appellees.

OPINION

Before BARNES, WRIGHT and WALLACE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

This is an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) from a district court decision granting summary judgment in favor of Matson Terminals, Inc., limiting Matson's liability as a stevedore to a maximum of $500, as distinguished from the claimed damage in excess of $14,000. We affirm.

S.N.T.F.L.I. Gonrand delivered to defendant Italpacific Lines in Italy an industrial dry cleaning machine for delivery to Vancouver, B. C. Labor trouble at the destination required delivery instead at Tacoma. At the time of the discharge, appellant Tessler Brothers was the holder in due course of the bill of lading that Italpacific had initially issued to Gonrand. Matson Terminals unloaded the cargo. Tessler Brothers, alleging that Matson damaged the machine in excess of $14,000, sued Italpacific for breach of the contract of carriage, and sued Matson for negligence.

Italpacific and Matson claimed that liability, if any, was limited to $500 under § 4(5) of the Carriage of Goods by Sea Act (COGSA) [46 U.S.C. § 1304(5)] and/or the terms of the bill of lading, which contained no declaration of value of the machine. Tessler and Matson moved for summary judgment on the issue of the limitation of Matson's liability to $500. A ruling in Matson's favor prompted this appeal.

Clause 1 of the bill of lading provided that the bill would be subject to the provisions of COGSA, § 4(5) of which provides:

Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, *unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading.* This declaration, if embodied in the bill of lading, shall be prima facie evidence, but shall not be conclusive on the carrier. [Emphasis added.]

Matson claims that its liability as stevedore is limited under § 4(5) by virtue of clause 21 of the bill of lading.[1] This clause, which purports to extend protections provided for the carrier to those employed by the carrier, is commonly known as a "Himalaya clause."[2] Matson also claims the benefit of clause 18 of the bill of lading, which contains substantially the same provisions limiting liability as § 4(5).

Tessler raises two principal issues on appeal. It contends, first, that an ocean carrier (Italpacific in this case) cannot extend its own limitation of liability to independent stevedores by using a Himalaya clause in a bill of lading. Secondly, it contends that, even if Himalaya clauses are valid, the bill of lading in this case does not, when strictly construed, extend the limitation of liability to the stevedore. We conclude that both contentions are erroneous.

## I

### THE EXTENSION OF COGSA LIMITATIONS TO STEVEDORES

Whether a stevedore may benefit from the limitation of liability provisions in COGSA or in an ocean bill of lading has been the subject of considerable litigation. In Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 79 S. Ct. 766, 3 L.Ed.2d 820 (1959), the Supreme Court considered the issue in order to resolve an intercircuit conflict.[3]

In *Herd,* cargo interests sued a stevedore for damages resulting from the stevedore's dropping of a press being loaded for foreign shipment. Both the COGSA provisions and the applicable bill of lading limited the liability only of the carrier and the ship, making no reference to agents or independent contractors of the carrier. COGSA defines the term "carrier" to include "the owner or the charterer who enters into a contract of carriage with a shipper." [46 U.S.C. § 1301(a)]. The Supreme Court held that neither the language, the legislative history, nor the environment of the Act shows any intent by Congress to regulate stevedores. 359 U.S. at 302, 79 S.Ct. 766, 3 L.Ed.2d 820.

The Court next considered whether the parties had intended in the bill of lading to limit the stevedore's liability. It found that the bill of lading referred only to the "carrier's liability" and

1. Clause 21 provides:
   It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Shipper, Consignee, or Owner of the goods or to any of this Bill of Lading for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions in this Clause, every exemption, limitation, condition and liberty herein contained and *every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier* acting as aforesaid and for the purpose of all the foregoing provisions of the Clause the Carrier is or shall be deemed to be acting as agent or trustees on behalf and for the

   benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract in or evidence by this Bill of Lading. [Emphasis added.]

2. The name arises from the case of Adler v. Dickson, [1955] 1 Q.B. 158, involving the steamship "Himalaya."

3. *Compare* A. M. Collins & Co. v. Panama Railroad Co., 197 F.2d 893 (5th Cir.), cert. denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677 (1952) (holding that a stevedore, as an agent of the carrier performing the carrier's obligation, was entitled to a $500 per package limitation in the carrier's bill of lading because this limitation, while extending expressly only to the carrier, was not personal to the carrier) *with* R. C. Herd & Co. v. Krawill Machinery Corp., 256 F.2d 946 (4th Cir. 1958) (holding that the provisions of COGSA limiting a carrier's liability indicate no intention to regulate a stevedore's liability).

showed no intention to limit the liability of stevedores, an intention that could easily have been expressed.[4] The Court noted that the unlimited liability of an agent for his own negligence has long been embedded in the law, and anything in derogation of this principle, whether statute or private contract, must be strictly construed.[5]

Tessler mounts a four-pronged attack on the validity of Himalaya clauses. It contends, first, that *Herd* should not be read to indicate that parties may properly extend limitations of liability to stevedores by clearly expressing their intent to do so in the bill of lading. We reject this contention, as have other courts that have considered it.

■ The *Herd* court concluded that the stevedore's liability was not limited because no statute limited it and because the stevedore "was not a party to nor a beneficiary of the contract of carriage between the shipper and the carrier, and hence its liability was not limited by that contract." 359 U.S. at 308, 79 S.Ct. at 773. We and other courts interpret this to mean that under certain circumstances parties to a contract of carriage may limit a stevedore's liability, but only if the intent to do so is clearly expressed. Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934, 936 (2d Cir. 1972), cert. denied, 410 U.S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); Secrest Machine Corp. v. S. S. Tiber, 450 F.2d 285, 286 (5th Cir. 1971); Cabot Corp. v. S. S. Mormacscan, 441 F.2d 476, 478 (2d Cir. 1971), cert. denied, 404 U.S. 855, 92 S.Ct. 104, 30 L.Ed.2d 96 (1971); Dorsid Trading Co. v. S/S Fletero, 342 F.Supp. 1, 6 (S.D.Tex.1972); Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F.Supp. 76, 78 (S.D.N.Y.), aff'd mem., 386 F.2d 839 (2d Cir. 1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L.Ed.2d 162 (1968).

Tessler next contends that seven years before the Supreme Court's opinion in *Herd,* the Court held void any bill of lading clauses which deprive cargo interests of any portion of their rights against third parties.

In United States v. Atlantic Mutual Insurance Co., 343 U.S. 236, 72 S.Ct. 666, 96 L.Ed. 907 (1952), the Court held invalid "Both-to-Blame" clauses, often contained in the ocean bills of lading. Provisions in COGSA, 46 U.S.C. § 1304(2)(a), and the Harter Act, 46 U.S.C. § 192, took away, under some circumstances, the right of a cargo owner to sue his own carrier for cargo damages caused by the negligent navigation of the carrier's servants or agents. When two negligent vessels collided, however, the cargo owner could still recover from the non-carrying vessel. In a both-to-blame situation, each carrier was liable, vis-a-vis each other, for one-half the total damage, and the non-carrying vessel was entitled to include in the total the sums it had paid to owners of cargo in the carrying vessel. The carrying vessel thus ultimately became responsible for one-half the damage suffered by its cargo. The "Both-to-Blame" clause in *Atlantic Mutual* granted the carrying vessel the right to recoup those sums from its cargo owners.

The Supreme Court held this clause invalid, prompted by "the controlling rule that without congressional authority [carriers] cannot stipulate against their own negligence or that of their agents or servants." 343 U.S. at 242, 72 S.Ct. at 669. Given a cargo owner's right to recover from the non-carrying vessel, and the right of that vessel to re-

---

4. The Court stated:
   If such had been a purpose of the contracting parties it must be presumed that they would in some way have expressed it in the contract. Since they did not do so, it follows that the provisions of the bill of lading did 'not cut off [respondent's] remedy against the agent that did the wrongful act.' Sloan Shipyards Corp. v. Emergency Fleet Corp., 258 U.S. 549, 568, 42 S.Ct. 386, 66 L.Ed. 762.
   359 U.S. at 302, 79 S.Ct. at 769.

5. The Court expressly disagreed with the conclusion of A. M. Collins & Co. v. Panama Railroad Co., 197 F.2d 893 (5th Cir. 1952), *supra* note 3. 359 U.S. at 303, 79 S.Ct. 766.

cover one-half its liability to cargo from the negligent carrying vessel, a stipulation in the bill of lading requiring cargo to indemnify the carrying vessel for sums it paid the non-carrying vessel violated the rule against a carrier stipulating against its own negligence.

Tessler argues that this same reasoning condemns the contractual extension, not authorized by Congress in COGSA, of a limitation of liability to stevedores.

■ Tessler's argument is off base. True, a carrier cannot immunize itself from responsibility for its own negligence. It may, however, *limit* the amount of its liability if the limitation is tied to an agreed value of goods, subject to carriage at a specific freight rate, with the cargo owner having the option of declaring and recovering a higher value if it pays a higher rate.

■ This distinction between a limitation on liability and an exemption from liability is crucial. A limitation, unlike an exemption, does not induce negligence. Compensation for carriage is based on the value of the cargo agreed on by the carrier and the cargo owner and, unless immunized by act of Congress [*see* 46 U.S.C. § 1304(2)], a carrier who negligently damages cargo must respond in that value for its negligence. Hart v. Pennsylvania Railroad Co., 112 U.S. 331, 340–341, 5 S.Ct. 151, 28 L.Ed. 717 (1884); The Ansaldo San Giorgio I v. Rheinstrom Brothers Co., 294 U.S. 494, 496–497, 55 S.Ct. 483, 79 L.Ed. 1016 (1935).

Section 4(5) of COGSA [46 U.S.C. § 1304(5)] limits a carrier's liability to $500 unless a higher amount is inserted in the bill of lading.[6] *Atlantic Mutual,* while invalidating clauses that *exempt* carriers or their agents from liability for their negligence, is inapposite to a discussion of the validity of Himalaya clause in this case, which in effect purports to extend to a carrier's agents and servants all defenses provided for the carrier, including COGSA's limitation of liability. For this reason, it is not surprising that *Atlantic Mutual,* as Tessler itself notes, is not mentioned by the Supreme Court in *Herd* or by other courts that have considered the validity of Himalaya clauses.

■ A significant restriction on a carrier's right to limit liability to an amount less than the actual loss sustained is that the carrier must give the shipper "a fair opportunity to choose between higher or lower liability by paying a correspondingly greater or lesser charge. . . ." New York, New Haven & Hartford Railroad Co. v. Nothnagle, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953); Sommer Corp. v. Panama Canal Co., 475 F.2d 292, 298 (5th Cir. 1973), and cases cited therein. Clause 18 of the bill of lading in question provides that the $500 limitation exists "unless the nature of the goods and a valuation higher than $500, shall have been declared in writing by the shipper upon delivery to the carrier and inserted in the bill of lading and extra freight paid if required. . . ." Section 4(5) of COGSA, to which the bill of lading is expressly subject, has a similar provision.

■ Tessler contends there is no evidence that the shipper was offered a choice of rates, one with the limitation and another without it. The provisions in the bill of lading and COGSA are prima facie evidence of the opportunity to avoid the limitation, however, and it is Tessler's burden to prove that such an opportunity did not in fact exist. Petition of Isbrandtsen Co., 201 F.2d 281, 285 (2d Cir. 1953). Tessler did not carry this burden.

Tessler's third argument against the validity of a Himalaya clause is that § 6

---

6. Section 3(8) of COGSA [46 U.S.C. § 1303(8)] provides that any clause that lessens the liability of the carrier or the ship "otherwise than as provided in this chapter" shall be null and void. *See* Otis McAllister & Co. v. Skibs, 260 F.2d 181 (9th Cir. 1958), cert. denied, 359 U.S. 915, 79 S.Ct. 584, 3 L.Ed.2d 576 (1959). Thus, for example, parties cannot stipulate that they will never be liable for more than $400.

**444**

of COGSA describes the only situations, none of which is present here, in which protections may be extended beyond the carrier.

Section 6 [46 U.S.C. § 1306] [7] provides that in special cases a carrier, its agents, and a shipper may enter into "any agreement" as to their respective rights and liabilities. Tessler contends that the section indicates congressional intent to prohibit any other extension of protections not provided in the Act.

This argument does not withstand analysis. Section 6 concerns private, as opposed to common, carriage of goods by sea. It allows carriers and shippers to agree to *any terms* as to liability and immunity. Therefore, it even authorizes a total exemption from liability, although § 3(8) of COGSA would void such an exemption in an ordinary transaction. The context of § 6 simply does not support the inference that a carrier cannot, in ordinary cases, extend a statutory limitation of liability to its agents, merely because, in special situations, it can totally exempt itself, and possibly its agents, from liability.

Tessler's final argument is that the bill of lading is a contract of adhesion and that only persons who give "understanding consent" to such contracts may be bound thereby. *See* Cabot Corp. v. S. S. Mormacscan, 441 F.2d 476, 478 (2d Cir. 1971).

Congress passed the Harter Act and COGSA to counteract the persistent efforts of carriers, who are the drafters of ocean bills of lading, to insert all embracing exceptions to liability.[8] Ency-

---

7. 46 U.S.C. § 1306 provides:

Notwithstanding the provisions of sections 1303–1305 of this title, a carrier, master or agent of the carrier, and a shipper shall, in regard to any particular goods be at liberty to enter into *any agreement in any terms* as to the responsibility and liability of the carrier for such goods, and as to the rights and immunities of the carrier in respect of such goods, or his obligation as to seaworthiness (so far as the stipulation regarding seaworthiness is not contrary to public policy), or the care or diligence of his servants or agents in regard to the loading, handling, stowage, carriage, custody, care, and discharge of the goods carried by sea: *Provided, That in this case no bill of lading has been or shall be issued* and that the terms agreed shall be embodied in a receipt which shall be a nonnegotiable document and shall be marked as such.

Any agreement so entered into shall have full legal effect: *Provided, That this section shall not apply to ordinary commercial shipments made in the ordinary course of trade* but only to other shipments where the character or condition of the property to be carried or the circumstances, terms, and conditions under which the carriage is to be performed are such as reasonably to justify a special agreement. [Emphasis added.]

8. The plight of cargo owners was aptly expressed in *Them Damaged Cargo Blues*, by James A. Quinby, Esq., of the San Francisco bar, reprinted by permission.

It is much to be regretted
That your goods are slightly wetted
But our lack of liability is plain,
For our latest Bill of Lading
Which is proof against evading
Bears exceptions for sea water, rust and rain.
Also sweat, contamination,
Fire and all depreciation
That we've ever seen or heard of on a ship.
And our due examination
Which we made at destination
Shows your cargo much improved by the trip.
\* \* \* \* \*
It really is a crime
That you're wasting all your time,
For our Bill of Lading clauses make it plain
That from ullage, rust or seepage,
Water, sweat or just plain leakage,
Act of God, restraint of princes, theft or war,
Loss, damage or detention,
Lock out, strike or circumvention,
Blockade, interdict or loss twixt ship and shore,
Quarantine or heavy weather.
Fog and rain or both together,
We're protected from all these and many more,
And it's very plain to see
That our liability
As regards your claim is absolutely nil,
So try your underwriter,
He's a friendly sort of blighter,
And is pretty sure to grin and foot the bill.

clopedia Britannica, Inc. v. S. S. Hong Kong Producer, 422 F.2d 7, 11 (2d Cir. 1969), cert. denied, 397 U.S. 964, 90 S. Ct. 998, 25 L.Ed.2d 255 (1970). One of the specific purposes of COGSA was to obviate the necessity for a shipper to make a detailed study of the fine print clauses of a carrier's regular bill of lading on each occasion before shipping a package. *Id.* 422 F.2d at 14; H.R.Rep. No. 2218, 74th Cong., 2d Sess. 7 (1936).

■ We recognize that the content of ocean bills of lading is for all practical purposes completely within the carrier's power, subject to the provisions of COGSA, and that contracts purporting to limit liability must be strictly construed. Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. 297, 305, 79 S. Ct. 766, 3 L.Ed.2d 820 (1959); Sommer Corp. v. Panama Canal Co., 475 F.2d 292, 296 (5th Cir. 1973).

■ Even viewed in this light, we cannot agree that Tessler gave no "understanding consent" to the bill of lading. Tessler does not contend that it was unaware of the provisions in question;[9] nor did it present evidence to the district court adequately explaining its failure to declare a higher value, as the bill of lading provided that it could, and thereby increase the liability of the carrier and the carrier's agents, or to insure itself against the loss that occurred. In the absence of such evidence, we are reluctant to remedy what might be nothing more than lack of foresight.

## II

## DOES THE BILL OF LADING EXTEND THE LIMITATION OF LIABILITY TO STEVEDORES?

■ Tessler contends that, assuming the validity of Himalaya clauses in general, the bill of lading here involved does not limit Matson's liability. When strictly construed, Tessler argues, the bill does not extend the limitation of liability to independent contractors, and, in any event, stevedores are not covered unless the bill of lading mentions them expressly.

Clause 21 of the bill of lading has three distinct limbs:[10] first, it exonerates from liability to the shipper any "servant or agent of the Carrier (including every independent contractor . . .)"; second, it extends the carrier's rights and limitations of liability to "every such servant or agent of the Carrier . . ."; and, third, it provides that the carrier is deemed to be acting on behalf of "his servants or agents . . . (including independent contractors as aforesaid). . . ." Because of the term "independent contractors" is not used in the second of these three provisions, Tessler contends that this provision is inapplicable to independent contractors and, thus, to. Matson.

Although we strictly construe Clause 21,[11] we do not read it as narrowly as Tessler would have us. Reading

---

9. The amount of litigation that has surrounded the validity of Himalaya clauses leads us to believe that such clauses are not at all uncommon in modern ocean bills of lading. The Uniform Ocean Bill of Lading does not contain a Himalaya clause. It does, however, provide in Clause 17 for a choice of rates in language quite similar to that contained in Clause 18 of the bill of lading at issue. W. Poor, Charter Parties and Ocean Bills of Lading 423 (5th ed. 1968).

10. See note 1 *supra.*

11. The first limb of Clause 21 purports to exonerate from all liability any "servant or agent of the Carrier (including every independent contractor . . ..." Matson does

not seek a shield from liability by arguing that we should give effect to this first portion. Rather, it contends that the second portion of Clause 21, extending the carrier's rights and immunities to "such servant or agent," controls and extends the carrier's $500 limitation of liability to Matson.

We are at a loss to explain why the first portion is even in the bill of lading if it is not meant to have some effect. Given the adhesive nature of this contract, however, and the doctrine of strict construction of limitation of liability clauses, we read the first limb of Clause 21 to have significance only to the extent that it aids us in determining the parties to whom the clause as a whole is intended to apply.

the clause as a whole, it is apparent that "such servant or agent" in the second provision refers to the phrase in the first provision "servant or agent of the Carrier (including every independent contractor . . .)." The word "such" in the second provision emphasizes that a modification of "servant or agent"—that is, "including every independent contractor"—was intended to apply in the second provision.

The format of Clause 21 is very similar to the bill of lading clauses considered in Bernard Screen Printing Co. v. Meyer Line, 328 F.Supp. 288 (S.D.N.Y. 1971), aff'd, 464 F.2d 934 (2d Cir. 1972), cert. denied, 410 U.S. 910, 93 S. Ct. 966, 35 L.Ed.2d 272 (1973), and Carle & Montanari, Inc. v. American Export Isbrandtsen Lines, Inc., 275 F. Supp. 76 (S.D.N.Y.1967), aff'd mem., 386 F.2d 839 (2d Cir. 1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1263, 20 L. Ed.2d 162 (1968).[12] In both cases, the relevant clause first purported to exonerate completely from liability specifically named legal entities. The second provision stated the limitation of liability; however, in listing those to whom it extended, the provision did not repeat the parties set forth in the first provision, but merely used a phrase that referred to those parties. The courts in Bernard Screen and Carle & Montanari held, as do we now, that this format is sufficient to extend the limitation of liability in the second provision to the specific parties listed in the first provision.

Tessler's final contention is that, even if the bill of lading in question extends to independent contractors, it does not extend to stevedores, who must be mentioned expressly. Relying on Cabot Corp. v. S. S. Mormacscan, 441 F.2d 476, 478 (2d Cir. 1971), Tessler argues that stevedores are protected only if the word "stevedores" is included in the bill of lading.

Cabot involved a bill of lading limiting the liability of the "carrier," which was defined as "all persons rendering services in connection with performance of this contract." The defendant stevedore damaged plaintiff's goods while loading cargo belonging to another shipper. The Second Circuit, finding the language of the bill of lading ambiguous, refused to extend the limitation of liability to the stevedore. "One can only guess," the court stated, " . . . whether 'all persons rendering services' is designed to include stevedores loading the goods of another shipper." Id.

Whether a bill of lading extends limitations of liability to stevedores depends on whether "the clarity of the language used expresses such to be the understanding of the contracting parties." Robert C. Herd & Co. v. Krawill Machinery Corp., 359 U.S. at 305, 79 S.Ct. at 771. Two circuits have recently held that a bill of lading mentioning independent contractors clearly includes stevedores. Bernard Screen Printing Corp. v. Meyer Line, 464 F.2d 934, 936 n. 1 (2d Cir. 1972), cert. denied, 410 U. S. 910, 93 S.Ct. 966, 35 L.Ed.2d 272 (1973); Secrest Machine Co. v. S. S. Tiber, 450 F.2d 285, 287 (5th Cir. 1971). The language of the district court in Bernard Screen is instructive:

> To exclude "stevedores," who are independent contractors, from the scope of the more inclusive term would, in ef-

---

12. The bill of lading considered in Bernard Screen included the following clause:

The contract evidenced hereby is between the shipper and the owner or demise charterer of the ship designated to carry the goods. It is understood and agreed that, other than said shipowner or demise charterer, no person, firm or corporation or other legal entity whatsoever (including the master, officer and crew of the vessel and all agents and independent contractors) is, or shall be deemed to be, liable to the shipper or consignee as carrier, bailee or otherwise howsoever in contract or in tort. If, however, it shall be adjudged that any other than said shipowner or demise charterer is carrier or bailee of the goods or under any responsibility to the shipper or consignee, all defences (including all limitations of said exonerations from liability) provided to said shipowner or demise charterer by law or by terms hereof shall be available to such other.
. . .
464 F.2d at 935.

fect, be holding that parties by using the more inclusive term had accomplished the opposite result.

328 F.Supp. at 290. We agree, and hold that the bill of lading at issue extended a limitation of liability to Matson, a stevedore.

Affirmed and remanded for further proceedings.