KOMATSU, LTD., Komatsu America Corporation, and Nippon Fire & Marine Insurance Co., Ltd., Plaintiffs-Appellees,

v.

STATES STEAMSHIP COMPANY and American President Lines, Ltd., Defendants-Appellants.

No. 80–3006.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 1981.

Decided April 15, 1982.

Rehearing and Rehearing En Banc Denied July 26, 1982.

Michael H. Williamson, Madden & Poliak, Seattle, Wash., for defendants-appellants.

David R. Millen, Seattle, Wash., argued, for plaintiffs-appellees; E. C. Biele, Bogle & Gates, Seattle, Wash., on brief.

Before WALLACE and TANG, Circuit Judges and STEPHENS,* District Judge.

TANG, Circuit Judge:

This is an interlocutory appeal pursuant to 28 U.S.C. § 1292(a)(3) from a partial summary judgment denying the appellants the benefit of the $500 per package liability limitation contained in section 4(5) of the Carriage of Goods by Sea Act ("COGSA"), 46 U.S.C. § 1304(5) (1976). We affirm.

The facts are not in dispute. Komatsu, Ltd. contracted with States Steamship Company ("States") to ship a tractor aboard the S.S. COLORADO from Kobe, Japan to Seattle, Washington. States issued its regular form ocean bill of lading for the carriage of the tractor. Komatsu, Ltd. endorsed the bill and sent it to Komatsu America Corporation for negotiation when the tractor arrived. Before Komatsu America could present the bill to States, the tractor was damaged while being unloaded at Seattle by the stevedore, American President Lines, Ltd. ("APL"). The tractor was declared a constructive total loss and later sold for salvage at one-fourth its invoice value.

Komatsu, Ltd., Komatsu America, and the cargo insurance underwriter, Nippon Fire & Marine Insurance Co., Ltd. (collectively, "Komatsu"), alleging that APL damaged the tractor in excess of $16,500, sued States for breach of the contract of carriage and sued APL for negligence. Federal jurisdiction was based in admiralty.

States and APL (collectively, "States") claimed that liability, if any, was limited to $500 under section 4(5) of COGSA, 46 U.S.C. § 1304(5)[1] and under the terms of the bill of lading.[2] On cross-motions for summary judgment, the district court entered partial summary judgment for Komatsu, holding States and APL liable for the damage to the tractor and denying States and APL the benefit of the COGSA § 4(5) damage limitation.

Two issues are raised on appeal: (1) whether an ocean carrier is entitled to the damage limitation in COGSA § 4(5) if it incorporates by reference COGSA into its bill of lading; and (2) whether the filing of a carrier's tariff with the Federal Maritime Commission constitutes constructive notice and fair opportunity to the shipper to avoid the package limitation.

I. The Bill of Lading

Section 4(5) of COGSA limits a carrier's liability to $500 unless the nature and value of the shipped goods is declared by the shipper and inserted in the bill of lad-

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation.

1. COGSA § 4(5), 46 U.S.C. § 1304(5), provides in pertinent part:

 Neither the carrier nor the ship shall in any event be or become liable for any loss or damage to or in connection with the transportation of goods in an amount exceeding $500 per package lawful money of the United States, or in case of goods not shipped in packages, per customary freight unit, or the equivalent of that sum in other currency, unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading. This declaration, if embodied in the bill of

lading, shall be prima facie evidence, but shall not be conclusive on the carrier.

2. COGSA applies to this contract ex proprio vigore with respect to the shipper and carrier because it is a contract for carriage between a foreign port and a port of the United States. See 46 U.S.C. §§ 1300, 1312. It also applies ex contractu because the terms of the bill of lading make the transaction subject to COGSA. See 46 U.S.C. § 1312. The bill of lading also contains a "Himalaya" clause, which extends COGSA's provisions to the stevedore APL on the same terms and availability as the carrier. See Tessler Brothers (B.C.), Ltd. v. Italpacific Line, 494 F.2d 438, 445–46 (9th Cir. 1974).

ing. To guarantee that carriers respect the statutory option to declare a higher value and as a contract principle used in interpreting damage limitations authored by carriers, carriers are permitted to limit liability to an amount less than the actual loss only if the carrier gives the shipper "a fair opportunity to choose between a higher or lower liability by paying a correspondingly greater or lesser charge . . . ." *Tessler Brothers (B.C.), Ltd. v. Italpacific Line*, 494 F.2d 438, 443 (9th Cir. 1974) (quoting *New York, New Haven & Hartford Railroad Co. v. Nothnagle*, 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953)).[3] Consistent with the longstanding rule that the burden of proof is upon the carrier to demonstrate the validity of a contractual liability limitation, *see New Jersey Steam Navigation Co. v. Merchant's Bank*, 47 U.S. (6 How.) 344, 382, 12 L.Ed. 465 (1847), the burden of proving "fair opportunity" is initially upon the carrier. Express recitation in a bill of lading of the language contained in COGSA § 4(5) is prima facie evidence that the carrier gave the shipper that opportunity and places the burden on the shipper to prove that such an opportunity did not exist in fact. *Tessler*, 494 F.2d at 443; *Isbrandtsen Co. v. United States*, 201 F.2d 281, 285 (2d Cir. 1953).

States claims that it met its evidentiary burden by including in the bill of lading a "Paramount Clause", which indicated that COGSA's provisions governed the parties' contractual relations.[4] States reasons that Komatsu would have discovered the damage limitation contained in section 4(5) and the section's statement that a shipper may raise the damage limitation by declaring a higher value if it had read COGSA's provisions. As the Paramount Clause incorporated all of COGSA's provisions into the bill of lading by reference, States concludes that Komatsu should be charged with constructive notice of the option to declare a higher value. We disagree.

In *Pan American World Airways, Inc. v. California Stevedore and Ballast Co. ("Pan Am")*, 559 F.2d 1173 (9th Cir. 1977) (per curiam), this court ruled that merely incorporating COGSA's provisions into a Paramount Clause was not prima facie evidence that a carrier gave the shipper the opportunity to declare a higher value.[5] We stated:

. . . [W]e reject appellant's argument that an experienced shipper should be deemed to have knowledge of an opportunity to secure an alternative freight rate, and higher carrier liability by reason of his knowledge of COGSA, 46 U.S.C. § 1304(5), made applicable by a "Paramount Clause" in the bill of lading, where

**3.** This rule reflects both the American courts' historic reluctance to enforce carrier damage limitation provisions, *see, e.g., The Kensington*, 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190 (1902), and the judicial recognition that Congress enacted COGSA and the Harter Act to counteract the persistent efforts of carriers to insert all embracing exceptions to liability in bills of lading, *see Tessler Brothers (B.C.), Ltd. v. Italpacific Line*, 494 F.2d 438, 444 (9th Cir. 1974).

**4.** The Paramount Clause provided:
1. (a) As far as this bill of lading covers the carriage of goods by water, this bill of lading shall have effect *subject to the Carriage of Goods by Sea Act* of the United States, 1936, (COGSA), (or any other enactment of Hague Rules where applicable) to the extent, but only to the extent, required by such Act, *and to that extent is deemed to be incorporated herein.* During any time when COGSA is not applicable by its own terms and the carrier has any responsibility by law or otherwise with respect to cargo, such responsibility

shall be governed by, and limited to, that prescribed by Subsections . . . (5) and (6) of Section 4, . . . which subsections . . . *are incorporated herein by reference and made a part hereof.* (Emphasis added).

**5.** The Paramount Clause in *Pan Am* is substantially similar to the Paramount Clause considered here. The Paramount Clause in *Pan Am* provided:
2. PARAMOUNT CLAUSE.
This bill of lading shall have effect *subject to the provisions of the Carriage of Goods by Sea Act* of the United States of America, approved April 16, 1936, *which shall be deemed to be incorporated herein,* and nothing herein contained shall be deemed a surrender by the Carrier of any of its *rights or immunities* or an increase of any of its responsibilities or liabilities under said Act. *Pan American World Airways, Inc. v. California Stevedore and Ballast Co.,* 559 F.2d 1173, 1175 n.4 (9th Cir. 1977) (emphasis added).

such opportunity does not present itself on the face of the bill of lading. The bill of lading is usually a boilerplate form drafted by the carrier, and presented for acceptance as a matter of routine business practice to a relatively low-level shipping employee. We feel that imputing such knowledge of COGSA applicability and provisions to such an employee is an assumption that may go beyond the bounds of commercial realism.

*Id.* at 1177.

 States acknowledges our holding in *Pan Am*, but urges that it applies only when the bill of lading also contains a clause expressly nullifying one of the rights COGSA confers. We believe that State's interpretation fundamentally misreads *Pan Am*'s facts and holding. Two clauses were at issue in *Pan Am*. The first clause provided that "in no case" would the carrier assume damage liability in excess of $500 per package. The court held that this clause directly conflicted with COGSA and declared the provision null and void. The court then examined the bill of lading's remaining terms to determine if any other provision gave the shipper an opportunity to declare a higher value. The carrier pointed to the Paramount Clause as such a provision, but the court rejected the contention on the grounds quoted above. The important point is that the court's holding with respect to the adequacy of the Paramount Clause was not dependent or qualified by the court's decision to excise and remove the "in no case" clause from the bill of lading. Given *Pan Am*, we must conclude that the Paramount Clause is not prima facie evidence that States gave Komatsu a "fair opportunity" to declare a higher value.

**6.** States also contends that COGSA § 13, 46 U.S.C. § 1312, requires carriers to employ incorporation by reference. The argument is meritless. Section 13 leaves a carrier free to quote the language of section 4(5) in full. *See, e.g., Tessler Brothers (B.C.), Ltd. v. Italpacific Line,* 494 F.2d 438, 443 (9th Cir. 1974).

States also complains that unless incorporation by reference of COGSA is recognized as

 States also relies upon Clause 18 of the bill of lading as prima facie evidence that it gave Komatsu a "fair opportunity" to declare a higher value. Clause 18 states:

18. Reference is hereby made specifically to *value limitations (46 U.S.Code 1304(5))* and time limitations for filing claim and bringing suit (46 U.S.Code 1303(6)) which shall apply and *are incorporated herein by reference.*

(Emphasis added).

By referring to the specific statutory section that gives a shipper an option to declare a higher value, the highlighted portion of Clause 18 affords slightly more notice to a shipper than the Paramount Clause considered in *Pan Am*. It nonetheless falls prey to and is subject to the same defect found fatal in *Pan Am*. *Pan Am* requires that the "opportunity" to declare a higher value must "present itself on the face of the bill of lading" to constitute prima facie evidence. *Id.* at 1177. Clause 18 does not meet this standard. The clause contains only an oblique reference to the contents of a statutory section. Given *Pan Am*'s command that shippers are not to be charged with constructive notice of the minute details of COGSA, we must conclude that this clause is not prima facie evidence that States gave Komatsu a "fair opportunity" to avoid States' limitation of damage liability.[6]

## II. *The Tariff*

States contends that Komatsu had constructive notice of the opportunity to declare a higher value because its tariff, filed with the Federal Maritime Commission pursuant to the Shipping Act, 46 U.S.C. § 817(b), includes such a provision. Rule 26 of the tariff states:

prima facie evidence, carriers will be forced to expressly reprint the language of section 4(5) in full. States contends this will complicate and lengthen shipping forms. This may be true, but we are not empowered to disregard our circuit's precedent for the sake of the carrier's administrative convenience.

The liability of the carrier as to the value of shipments at the rates herein provided shall be determined in accordance with the clauses of the respective carrier's regular Bill of Lading form. If the shippers desire to be covered for a valuation in excess of that allowed by the carrier's regular Bill of Lading form, the shippers must so stipulate in carrier's Bill of Lading covering such shipments and such additional liability only will be assumed to be the carrier's at the request of the shippers and upon payment of an additional charge of 5.2% ad valorem of the total declared valuation in addition to the stipulated rate on the commodities shipped as specified herein.

The shippers who have elected to show value of the goods on the Bill of Lading shall be deemed to have desired to be covered for the value in excess of that allowed by the carrier's regular Bill of Lading form, and must be assessed the above-mentioned additional charge.

Komatsu argues that even if it can be charged with knowledge of the tariff's terms, the applicability of Rule 26 is dependent upon the bill of lading expressly limiting the carrier's damage liability. It contends that the bill of lading did not satisfy this pre-condition because it failed to give Komatsu effective notice that a package limitation existed. It concludes that without such notice, it cannot be charged with knowledge of the tariff's option to declare a higher value. Komatsu's argument has merit.

■ Assuming that a tariff gives a shipper constructive notice, it imparts notice only of what is contained in the tariff's language. As the carrier is the tariff's author, ambiguities in its language must be strictly construed against the carrier. See Continental Can Co. v. United States, 272 F.2d 312, 315 (2d Cir. 1959). States relies upon the tariff's second and third sentences to establish that Komatsu had notice of the opportunity to declare a higher value. These two sentences, however, merely set out the applicable rates if a shipper declares a value higher than that stipulated in the bill of lading. By the tariff's terms, the two sentences' operational significance is contingent upon the application of the tariff's first sentence. The first sentence, in turn, states merely that damage liability will be governed by the bill of lading; its operation, and thus the operation of Rule 26 generally, is therefore contingent upon the bill of lading including a term limiting damage liability. The bill of lading here does not expressly limit State's liability; the bill, however, does incorporate by reference COGSA's damage liability limitation.

■ The issue is whether this reference is sufficiently explicit to make a shipper aware that a package limitation exists and that he should refer to Rule 26, including the rule's last two sentences. We conclude that it is not.

The result in Pan Am is premised on the principle that a shipper is not to be charged with constructive notice of the damage liability limitation in COGSA. It would be anomalous to conclude that a tariff rule provides such notice if that rule's operation depends upon the shipper having constructive notice of the same COGSA provision. The carrier here cannot accomplish indirectly what Pan Am forecloses it from accomplishing directly. We therefore conclude that the tariff does not constitute prima facie evidence that Komatsu had a "fair opportunity" to declare a higher value.[7]

7. A different case might have been presented had the bill of lading here expressly alerted the shipper to a $500 package limitation, see Brown & Root, Inc. v. M/V Peisander, 648 F.2d 415 (5th Cir. 1981), or if the tariff by its own terms imposed a specific package limitation. We express no opinion as to the proper result under such facts.

We also reserve the question whether 46 U.S.C. § 817 requires a carrier to include a damage liability limitation in its tariff. Cf. Port of Tacoma v. S. S. Duval, 364 F.2d 615, 617 (9th Cir. 1966) (filing of tariff gives constructive notice of only those terms that are required by law to be filed).

III. *States Request for Remand*

 In the event we hold that it is not entitled to claim the benefit of the damage liability limitation as a matter of law, States requests that this court remand the case to the district court to determine whether Komatsu *in fact* was aware of the option to declare a higher value. The record prepared by States on appeal reveals, however, that States did not raise this issue below. It relied instead exclusively upon the arguments discussed in sections I and II of this opinion. An appellate court will not review an issue not raised nor objected to below unless necessary to prevent manifest injustice. *Jonas v. United States Small Business Administration (In re Southland Supply, Inc.)*, 657 F.2d 1076, 1079 (9th Cir. 1981). States gives no reason for its failure to raise this issue prior to the district court's entry of partial summary judgment. Under such circumstances, an appellant may not overturn a summary judgment by raising an issue of fact on appeal that was not plainly disclosed as a genuine issue in the trial court. *See Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978). Remand on this issue is therefore inappropriate.

As no prima facie evidence was presented to indicate that Komatsu had a "fair opportunity" to declare a higher value, the district court was correct in denying States and APL the benefit of COGSA's damage liability limitation and in granting partial summary judgment for Komatsu.

AFFIRMED.