752 F.2d 1401
 118 L.R.R.M. (BNA) 2890, 40 Fed.R.Serv.2d 1421,
102 Lab.Cas. P 11,354
 INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMAN LOCAL
UNION NO. 20, AFL-CIO; Brick And Tile Health And Welfare
Trust; Brick And Tile Pension Trust; Brick And Tile
Vacation Trust, Plaintiffs-Appellants,
v.
MARTIN JASKA, INC., et al., Defendant-Appellee.
 No. 84-5634.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 3, 1984.
Decided Jan. 30, 1985.
 
 1
 Ray Van Der Nat, Van Der Nat, McNeil & Haywood, Los Angeles, Cal., for plaintiffs-appellants.
 
 
 2
 John H. Stephens, Cox, Castle & Nicholson, Los Angeles, Cal., for defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before WALLACE and BOOCHEVER, Circuit Judges, and MacBRIDE,* District Judge.
 
 MacBRIDE, District Judge:
 
 5
 The International Union of Bricklayers and affiliated benefit trust funds ("Bricklayers") sued appellee Martin Jaska, Inc. ("Jaska"), a construction general contractor, for damages caused by Jaska's breach of collective bargaining agreements it had with two other unions. Bricklayers theorized that it was the intended third-party beneficiary of those agreements.
 
 
 6
 Upon cross-motions for summary judgment, the trial court entered judgment for defendant Jaska. We affirm and impose sanctions on appellants for bringing this frivolous appeal.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 7
 The appellee, Martin Jaska, Inc., is a medium-sized general contractor in construction. Appellants are the International Union of Bricklayers & Allied Craftsman Local Union No. 20, AFL-CIO, Brick and Tile Health and Welfare Trust, Brick and Tile Pension Trust, and Brick and Tile Vacation Trust (collectively "Bricklayers"). The Bricklayers Union represents all unionized bricklaying and tile-setting workers in the geographical area in which Jaska operated. The Trust Funds benefit from contributions made by employers who engage workers represented by the Bricklayers Union.
 
 
 8
 Jaska was bound to follow the terms of two Master Labor Agreements ("MLA's") negotiated with the Carpenters' Union ("Carpenters") and the Laborers' Union ("Laborers"). Each agreement had substantially identical provisions which forbade Jaska from subcontracting any jobsite work to non-union firms.[1]
 
 
 9
 Jaska allegedly breached those provisions twice on one construction project, by subcontracting out bricklaying and tile-setting work to non-union firms. Appellants thereupon brought suit for damages arising out of those breaches. Bricklayers' theory of recovery was that it was the intended third-party beneficiary of Jaska's agreements with the Carpenters and Laborers not to subcontract with non-union concerns. Jaska denied that Bricklayers was an intended beneficiary.
 
 
 10
 The dispute turned on a provision in the relevant MLA's which set out the stated purposes of the MLA's ban on using non-union subcontractors.[2] Bricklayers argued below that this provision suggested that the prohibition was expressly intended to benefit all unionized construction tradesmen, not just those represented by unions privy to the MLA. Jaska, of course, took a diametrically opposed view of that provision.
 
 
 11
 After discovery had been completed, and a trial date had been set, the parties joined in lodging a Proposed Pre-Trial Order ("PTO").[3] In this document, which set the blueprint for the proceedings which were to follow, both parties expressly "waived trial" of the case. They stipulated to all the relevant facts, and stated that no factual issues, except for the computation of damages, remained for trial. Moreover, the parties invited the court to decide the proper construction of the contract on cross-motions for summary judgment. The PTO established a briefing schedule and set the length of oral argument on the cross-motions.
 
 
 12
 Pursuant to the PTO, the parties filed their cross-motions and supporting points and authorities. After an extensive hearing, the trial court granted summary judgment to defendant Jaska, and filed a statement of findings and conclusions.
 
 
 13
 This appeal followed entry of judgment.
 
 BRICKLAYERS' APPEAL
 
 14
 In reviewing a grant of summary judgment, our task is identical to that of the trial court. In Re New England Fish Co., 749 F.2d 1277 at 1280 (9th Cir.1984). Viewing the evidence in a light most favorable to the party against whom summary judgment is granted, we must determine whether the trial court correctly found that there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. In Re Complaint of McLinn, 744 F.2d 677, 680 (9th Cir.1984).
 
 
 15
 We will not, however, review an issue not raised below unless necessary to prevent manifest injustice. Kline v. Johns-Manville, 745 F.2d 1217, 1221 (9th Cir.1984), quoting Komatsu, Ltd. v. States Steamship Co., 674 F.2d 806, 812 (9th Cir.1982). Before this court will address such an issue, the proponent "must show exceptional circumstances why the issue was not raised below." Taylor v. Sentry Life Insurance Co., 729 F.2d 652, 655-56 (9th Cir.1984) (per curiam). In the absence of such circumstances, appellants may not upset an adverse summary judgment by raising an issue of fact on appeal that was not plainly disclosed as a genuine issue before the trial court. Komatsu, Ltd., 674 F.2d at 812; see also Sentry Life, 729 F.2d at 655-56.
 
 
 16
 In the same vein, we will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's opening brief. See Hernandez v. City of Los Angeles, 624 F.2d 935, 937 n. 2 (9th Cir.1980); Kopczynski v. The Jacqueline, 742 F.2d 555, 560 (9th Cir.1984) (claims of error on appeal "must be specific").[4]
 
 
 17
 On this appeal, Bricklayers avers in its statement of issues that the trial court erred in granting summary judgment to Jaska. Taken on its face, such a contention would seem to invite plenary review of the grant of summary judgment. A careful reading of appellant's opening brief makes plain, however, that appellants' sole objection to summary judgment is that material factual issues remained for trial. No argument, or specific designation of error regarding any of the trial court's legal conclusions, including its construction of the contract, can be reasonably inferred from appellants' brief. Accordingly, we decline to address the merits of Bricklayers' contention below that it was a third-party beneficiary of the MLA in question.[5]
 
 
 18
 We proceed then to address the issue which appellant has raised, namely, that the district court granted summary judgment in the face of disputed and material factual issues. Two errors are alleged: first, the district court is claimed to have impermissibly drawn factual inferences from the stipulated facts; second, the MLA provision was ambiguous, and the district court should have considered parol evidence to establish the fact of ambiguity and to determine the parties' intent. These factual issues, Bricklayers contends, preclude summary disposition.
 
 
 19
 Bricklayers' first contention in this court is that the trial court resolved a factual issue on summary judgment by drawing unfavorable inferences from the stipulated facts. Even where the basic facts are stipulated, if the parties dispute what inferences should be drawn from them, summary judgment is improper. See Jewel Cos. v. Pay Less Drug Stores Northwest, 741 F.2d 1555, 1566 (9th Cir.1984); Morrison v. Nissan Co., 601 F.2d 139, 141 (4th Cir.1979). For this rule to apply, however, the parties must actually dispute which inferences are properly drawn from the stipulated facts. The record below reveals that appellants failed to place any factual issue in controversy. Moreover, Bricklayers does not point to any unfavorable inference that the trial court drew. Nor does the record reveal any. Ultimately, appellants' argument reduces to the claim that since the court reached an adverse construction of the contract, it must have drawn unfavorable inferences from the facts. That claim is meritless.
 
 
 20
 Bricklayers' second contention is that the MLA provision in question is ambiguous. It argues that under applicable law, extrinsic evidence is admissible to prove that a contract provision is ambiguous, and that, once the ambiguity is shown, such evidence is admissible to show the intent of the contracting parties. Bricklayers asserts that it was prepared to present favorable extrinsic evidence at trial. In its view, therefore, the district court erred by granting summary judgment in the face of the genuine factual issue presented by that evidence.
 
 
 21
 Whatever the merits of these arguments, they were not properly preserved. The record is devoid of any indication that these factual issues were brought to the attention of the trial court. To the contrary, the record reveals that Bricklayers represented to the trial court that the import of the contract was "unmistakeably clear", denied reliance on external evidence, and invited the court to construe the MLA as a matter of law.
 
 
 22
 The initial burden of showing the absence of material factual issues rests on the proponent of a summary judgment motion. Once that burden is met, however, the opponent must counter with specific factual allegations revealing a genuine dispute of fact in order to preclude summary disposition. See Zoslaw v. MCA Distributing Corp., 693 F.2d 870, 883 (9th Cir.1982), cert. denied, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983).
 
 
 23
 Nowhere in the Proposed Pre-Trial Order, in appellants' brief below, or in the course of oral argument, did appellants seek to introduce extrinsic evidence[6] or raise the issue of ambiguity addressed to this court. In such circumstances, those issues must be deemed as waived, and cannot be raised for the first time here.
 
 
 24
 Bricklayers protests that it should have been obvious to the trial court that the MLA was ambiguous since the parties disagreed as to its meaning. That contention is frivolous. The fact that the parties dispute a contract's meaning does not establish that the contract is ambiguous. Cf. Boudreau v. Borg-Warner Acceptance Corp., 616 F.2d 1077, 1079 (9th Cir.1980) (applying Arizona law). Rather, this case is like that described in Seymour v. Coughlin Co., 609 F.2d 346, 349 (9th Cir.1979), cert. denied, 446 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 816 (1980), in which "both parties contend that the agreement is unambiguous, [but] each contends for an interpretation favorable to its position."
 
 
 25
 Our review of the record makes plain that the parties to this case acted in concert below to avoid a trial on the issue of liability and to submit the construction of the contract for the court to determine as a matter of law. Appellants' effort to raise factual issues after the entry of an adverse summary judgment reveals itself to be a futile and desperate attempt to salvage a sunken ship.
 
 FRIVOLOUS APPEAL
 
 26
 In its brief, Jaska requested an award of double costs and attorneys' fees for defending a frivolous appeal. Bricklayers had the opportunity of responding to that contention in its reply brief and at oral argument. This court has discretion to tax costs and attorneys' fees as a penalty for bringing a frivolous appeal. Fed.R.App.P. 38; 28 U.S.C. Sec. 1912. A frivolous appeal is defined as one in which the result is obvious, or where the appellants' claims are utterly meritless. Taylor v. Sentry Life Insurance Co., 729 F.2d 652, 656 (9th Cir.1984) (per curiam).
 
 
 27
 This case is not the usual candidate for sanctions, in that, unlike most of the other cases before us in which we have imposed sanctions, here the underlying action brought before the district court was clearly not frivolous. Although plaintiffs' claim was novel, and ultimately unsuccessful, its arguments were colorable and the result was not obvious.[7]
 
 
 28
 The relevant inquiry, however, is not whether the entire litigation is frivolous from beginning to end, but whether the appeal brought is frivolous. One of the purposes of sanctions is to encourage attorneys to be reflective about the issues they present for review. "Counsel must realize that the decision to appeal should be a considered one ... not a knee-jerk-reaction to every unfavorable ruling." Libby, McNeill & Libby v. City National Bank, 592 F.2d 504, 515 (9th Cir.1978), quoting Simon & Flynn, Inc. v. Time, Inc., 513 F.2d 832, 835 (2d Cir.1975) (per curiam).
 
 
 29
 Though the merit of Bricklayers' case below was at least arguable, by contrast its points on appeal are baffling, frivolous, and entirely inconsistent with its contentions before the trial court. To argue that the presence of factual issues requires reversal when appellants' every act below was designed to squelch issues of fact, to avoid trial, and to attain a construction of the contract as a matter of law is the height of bravado. "Some penalty should attach to taking up our time with such a meritless contention," NLRB v. Smith & Wesson, 424 F.2d 1072, 1073 (1st Cir.1970) (per curiam), and for imposing on appellee the cost of opposing this appeal.
 
 
 30
 Accordingly, we impose sanctions on appellants and their attorney, jointly and severally, of single costs and Jaska's attorneys' fees for this appeal.[8] Jaska shall file an affidavit stating its costs and attorneys fees within 20 days of the entry of this opinion. An appropriate award shall be made by separate order.
 
 
 31
 AFFIRMED.
 
 
 
 *
 The Honorable Thomas J. MacBride, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The provision read: "[Jaska] agrees that he or any of his subcontractors on the jobsite, will not contract or subcontract work to be done at the site of construction, alteration, painting, or repair of a building, structure or other work, except to a person, firm, or corporation party to the appropriate, current labor agreement with the appropriate Union, or subordinate body, associated with the Building and Construction Trades Department, AFL-CIO or with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, or an affiliate thereof."
 
 
 [2]
 This provision read: "The purposes of this Article are to preserve and protect the work opportunities normally available to employees and workmen covered by this Agreement, maintenance and protection of standards and benefits of employees and workmen negotiated over many years, and preservation of the right of Union employees, employed hereunder, from being compelled to work with non-union workmen."
 
 
 [3]
 The Proposed Pre-Trial Order was signed by attorneys for both parties under the note: "Approved as to form and content." Although the court never signed the PTO, the court clearly relied on its contents and appellants do not argue that they are not bound by it
 
 
 [4]
 We recognize that we have discretion in certain cases to consider improperly presented claims of error, where the appellee is not misled and the issue has been fully explored. See Ellingson v. Burlington Northern, Inc., 653 F.2d 1327, 1332 (9th Cir.1981). This is not the case here
 
 
 [5]
 For the same reasons, we need not address appellee's contention that the trial court concluded, as an alternative basis for its decision, that appellants must arbitrate any dispute arising out of the contract
 
 
 [6]
 Bricklayers points to a provision in the Proposed Pre-Trial Order which provides for trial on the merits in the event that the court "deems the stipulated facts to be inadequate to reach a judgment", and to its remark made at the hearing that "just in case" the court decided that it did not have enough facts, Bricklayers would "present live evidence as to what you decided you needed." Appellants argue that these statements brought to the attention of the court factual issues material to the case. In the absence of any showing to the trial court, however, what such extrinsic evidence was, and how it was material to the court's construction of the MLA, these statements must be deemed pitiably inadequate to raise a genuine issue of fact
 
 
 [7]
 From the record in this case, it is clear that the MLA provision prohibiting Jaska from subcontracting with non-union firms, if obeyed, would in fact materially benefit the Bricklayers Union and affiliated Trust Funds. To the extent that it is reasonable to believe that many labor unions perceive a community of interests among all organized workingmen, it was not frivolous to argue below that that benefit was an intended, and not merely incidental effect of that provision
 
 
 [8]
 When a frivolous appeal is taken, we have the inherent power to impose sanctions upon the appellant and his counsel "jointly and severally, since attorney and client are in the best position between them to determine who caused [the] appeal to be taken." United States v. Potamkin Cadillac Corp., 689 F.2d 379, 382 (2d Cir.1982) (per curiam). Accord, United States v. Phoenix Petroleum Co., 727 F.2d 1579, 1582 (Temp.Emer.Ct.App.1984) (per curiam); Asberry v. United States Postal Service, 692 F.2d 1378, 1382 (Fed.Cir.1982); cf. McConnell v. Critchlow, 661 F.2d 116, 118-19 (9th Cir.1981) (joint and several sanctions imposed after discussion at oral argument)