**MARPORT, INC., an Oregon corporation; and California Dredging, a California Corporation, Plaintiffs/Appellants,**

v.

**STABBERT AND ASSOCIATES, INC., a Washington corporation, Defendant/Appellee.**

No. 84–1786.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1985.

Decided Sept. 16, 1985.

William P. Horton, Alex L. Parks, Parks, Montague, Allen & Greif, Portland, Or., for plaintiffs/appellants.

Stanley L. Gibson, Derby, Cook, Quinby & Tweedt, San Francisco, Cal., for defendant/appellee.

Before ANDERSON and CANBY, Circuit Judges and REA * District Judge.

CANBY, Circuit Judge:

Marport concedes that under the terms of the towage agreement, it may recover from Stabbert only by demonstrating that the tug's unseaworthiness caused Marport's loss. The district court, failing to find any material factual issue as to the seaworthiness of the tug, granted summary judgment for Stabbert. Because we agree with the ruling of the district court, we need not pass upon Stabbert's opening contention that it is entitled to judgment as a matter of law under *The Umbria*, 166 U.S. 404, 17 S.Ct. 610, 41 L.Ed. 1053 (1897), and progeny. *See, e.g., A & S Transportation Co., Inc. v. Tug Fajardo*, 688 F.2d 1, 2–3 (1st Cir.1982); *Alkmeon Naviera, S.A. v. M/V Marina L.*, 633 F.2d 789, 797 (9th Cir.1980).

### A. Seaworthiness and a Proper Lookout

■ Posting a proper lookout has been called "the first rule of seamanship." [1] Marport contends that Stabbert's reliance upon the tug captain to serve as lookout while simultaneously piloting the tug violated this rule, rendering the tug unseaworthy. We disagree.

Captain Dunatov and his mate alternated 12-hour watches. The record is uncontested that, during the period immediately prior to the capsizing, the dredge had been kept under relatively constant watch by Dunatov (as often as every five minutes) from the wheelhouse of the tug. *See Atlantic Gulf & Pacific Co. v. The Barney Turecamo*, 202 F.Supp. 31, 34 (S.D.N.Y. 1962) (watch over tow at intervals of ten minutes sufficient). The view from the wheelhouse was unobstructed and the

---

* The Honorable William J. Rea, United States District Judge for the District of Central California, sitting by designation.

1. *See* Analysis by the Rules of the Road Advisory Comm. of the Proposed Rules for Preventing Collisions on the Navigable Waters of the United States (Apr. 1980). The "lookout rule" is set forth as Rule 5 in both the international and inland navigation rules. *See* 33 U.S.C. foll. § 1602 (international); 33 U.S.C. § 2005 (inland).

dredge readily visible, whether by day or, given running lights, at night.

 Marport insists that Stabbert breached the proper lookout rule by relying upon one man to "operate and steer the tug, follow a compass course, observe the radar ... and at the same time keep the tow under close observation." It is well-settled, however, that the watch officer or helmsman may, under appropriate circumstances, serve as lookout from the wheelhouse of a tug in addition to performing other duties. *See Inland Oil & Transport Co. v. Ark-White Towing*, 696 F.2d 321, 325 (5th Cir.1983); *Anthony v. International Paper Co.*, 289 F.2d 574, 580 (4th Cir.1961); *Atlantic Gulf*, 202 F.Supp. at 34; Analysis by the Rules of the Road Advisory Comm., n. 1 *supra*. At the time of the capsizing, the tug was on course in calm and uncrowded waters. Marport introduced no evidence that surveillance from the wheelhouse was inappropriate under these circumstances.[2] Accordingly, no genuine factual dispute precluding summary judgment on this issue exists.[3]

### B. Seaworthiness and the Towing Winch Alarm

Stabbert does not dispute Marport's contention that an inoperative tow winch alarm would have rendered the tug unseaworthy. Instead, it correctly notes that Marport's assertion that the alarm was inoperative and contention that the dredge could have been saved had the alarm sounded are unsupported in the record. Marport insists that "[i]t is inconceivable"

that an operative alarm would not have sounded when the dredge capsized, and further asserts that "the tug could have immediately slowed its speed and thereby saved the dredge." In the absence of supporting evidence, however, such speculation will not bar summary judgment. *See* n. 3 *supra*.

### C. Seaworthiness and the Two-Section Watch

 Marport argues that Stabbert's failure to post a three-section watch constituted a statutory fault invoking *The Pennsylvania* rule. *See* n. 2 *supra*. Two-person watches such as that posted here are permitted only on voyages of less than six hundred miles. 46 U.S.C. § 673; 46 C.F.R. § 157.20–5(b). Noting that "the only evidence before this court establishes that the distance to be traveled was 567 nautical miles," the district court rejected Marport's argument.

On appeal, Marport concedes that the shortest distance between the arguably relevant ports was 567 miles, but argues that "[o]ne does not have to be a navigator to realize that the track line of the tug and dredge down the Pacific Coast from Astoria to the point where the dredge capsized and later sank was anything but the 'shortest route that safe navigation permits.' " While it is true that applicable regulations require that "a voyage of less than 600 miles" be "construed as meaning the entire distance traversed," 46 C.F.R. § 157.20–5(b), Marport's argument is sheer specula-

---

2. Marport invokes the rule established in *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1874), holding that violation of a statutory responsibility places the burden upon the violating vessel to show not only that the violation did not, but could not have contributed to the injury. Assuming that the proper lookout rule is such a statutory duty, *but cf. Anthony*, 289 F.2d at 581 (violation of lookout rule is not statutory fault within purview of *The Pennsylvania* rule), since there was no evidence that Stabbert violated the rule, we need not consider Stabbert's additional defense predicated upon *The Pennsylvania*'s requirement, 86 U.S. at 136, of a causal connection between the statute violated and the

loss suffered before shifting the burden to the violator.

3. Marport points to alleged "gaps" in the record and resorts to speculation in an effort to create genuine issues of material fact. As Stabbert correctly notes, however, Marport has failed to set forth specific facts as required by Fed.R. Civ.P. 56(e). On appeal, Marport cannot rely on purported "factual issues" which were unsupported below, *Komatsu Ltd. v. States Steamship Co.*, 674 F.2d 806, 812 (9th Cir.1982), or avoid summary judgment through sheer speculation. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978), *cert. denied*, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 1074 (1979).

tion in the absence of supporting evidence. No such evidence was introduced.[4]

Marport additionally argues, however, that the district court erred in considering the 567-mile distance simply from Astoria to San Francisco, noting that Stabbert's tug, "Western Seas I," left Coos Bay for Astoria for the purpose of linking with Marport's dredge and towing it to San Francisco. Since the distance from Coos Bay to Astoria is 201 nautical miles, treating Coos Bay instead of Astoria as the "initial port of departure," 46 C.F.R. § 157.20–5(b), would exceed the 600-mile limitation for two-person watches. Marport submits that Astoria was simply a "stop[ ] at [an] intermediate port[ ] while enroute" which can "not be[ ] considered as breaking the continuity of the voyage." *Id.*

Stabbert responds by noting that the parties involved in the allegedly negligent two-person watch, Capt. Dunatov and his mate, first joined the tug in Astoria, the port where the tug linked with Marport's dredge. Since Marport engaged Stabbert to tow its dredge from Astoria and Astoria is where the Captain and mate boarded the tug, we treat the voyage as beginning from Astoria rather than from Coos Bay.

AFFIRMED.[5]

---

**4.** Although Marport notes that it would have been "a simple matter" for Stabbert to produce the actual charts from the voyage making an accurate calculation of actual distance traveled possible, there is no indication that Marport sought these charts through discovery or attempted to introduce them as evidence.

**5.** Since Marport has failed to raise a genuine issue of material fact over the seaworthiness of the tug, the award of attorneys' fees must stand.