In re WHITE CLOUD CHARTER
BOAT CO., INC.

Frances ARKIN, Bradley Arkin and
Robert Arkin, Plaintiffs-Appellants,

and

Reynaldo Ortiz, Alvin Dick and
Roberta Dick, Plaintiffs,

v.

WHITE CLOUD CHARTER BOAT CO.,
INC., Arthur Kaplan and Walter Roberts, Defendants-Third-Party-Plaintiffs,

v.

Alvin DICK, Third-Party
Defendant-Appellee.

No. 85–5936.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1986.

Decided April 6, 1987.

Newton Kalman, Beverly Hills, Cal., for plaintiffs-appellants.

John Shean, Los Angeles, Cal., for appellee.

Before ALARCON, BRUNETTI and NOONAN, Circuit Judges.

ALARCON, Circuit Judge:

Appellants/plaintiffs Frances Pearl Arkin as Executrix of the will of Sherman Lloyd Arkin, deceased, and Frances Pearl Arkin, Bradley Alan Arkin, and Robert Scott Arkin (hereinafter collectively referred to as the Arkins) have filed an interlocutory appeal from designated portions of the district court's findings of fact and conclusions of law in this admiralty proceeding arising from the collision of two vessels. The Arkins contend that the court's findings are not supported by substantial evidence. Before reaching the merits of the Arkins' contentions, we must determine whether this appeal was timely filed.

## I.

Jurisdiction in admiralty is exclusively federal and is specifically granted to the district courts by 28 U.S.C. § 1333(1) (1982). A party may seek review of an interlocutory decree in an admiralty proceeding pursuant to 28 U.S.C. § 1292(a)(3) (1982). Section 1292(a)(3) provides in pertinent part:

Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

....

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

■ Appeals under section 1292(a)(3) are permitted only when the rights and liabilities of the parties are determined by the interlocutory decree. *Seattle-First Nat'l Bank v. Bluewater Partnership*, 772 F.2d 565, 568 (9th Cir.1985). In the instant matter, the interlocutory decree of the court determined the rights, duties, and liabilities of the parties. The court found that Alvin D. Dick (hereinafter Dick) was not negligent, that Walter Roberts (hereinafter Roberts) was negligent, that the White Cloud Charter Boat Company (hereinafter White Cloud) was liable for Roberts' negligence, and that White Cloud's liability is not limited to the value of either vessel involved.

The district court entered its findings of fact and conclusions of law on April 25, 1985. The Arkins filed this appeal of the court's interlocutory decree on May 24, 1985.

■ This court has not had occasion to consider the appropriate time limit for the filing of a notice of appeal from an interlocutory decree in an admiralty proceeding. The time limitations for the filing of a notice of appeal in admiralty proceedings were codified in 1948. 28 U.S.C. § 2107 (1982). Section 2107 provides that the notice of appeal in admiralty proceedings "shall be filed within ninety days after the entry of the order, judgment or decree appealed from, if it is a final decision, and *within fifteen days after its entry if it is an interlocutory decree.*" (Emphasis added). Because the Arkins filed their notice of appeal more than 15 days after the interlocutory decree was entered, it would be untimely if section 2107 were still in effect.

In 1948, Congress empowered the Supreme Court, pursuant to 28 U.S.C. § 2072 (1982), with the authority to prescribe general rules to govern the practice and procedure of the district courts and the court of appeals in civil actions, including admiralty cases. In 1966, the Supreme Court amended the Federal Rules of Civil Procedure, unifying procedure in civil and admiralty matters. Order of the Supreme Court, 383 U.S. 1031 (1966). The Supreme Court later adopted the Federal Rules of Appellate Procedure including Rule 4(a)(1), adopted in 1967, which provides that a notice of appeal in a civil case must be filed "within thirty days after the date of entry of the judgment or an order appealed from." Fed.R. App.P. 4(a)(1).

Our research has not disclosed any decision in which a court has been called upon to consider the applicability of the 30 day requirement of Rule 4(a)(1) to the review of an interlocutory decree in an admiralty proceeding. Several jurisdictions, however, have found that the 30 day requirement of Rule 4(a)(1) supplants the previous 90 day rule for the timeliness of an appeal of a final judgment in admiralty. *Curacao Drydock Co. v. M/V Akritas*, 710 F.2d 204 (5th Cir.1983); *Hansen v. Trawler Snoopy, Inc.*, 384 F.2d 131 (1st Cir.1967); *Feeder Line Towing Serv., Inc. v. Toledo, Peoria & Western R.R. Co.*, 539 F.2d 1107 (7th Cir.1976).

The court in *Curacao Drydock Co.*, 710 F.2d at 205 held that "the notice of appeal of a judgment in an admiralty case, like the notice of appeal in all other civil cases, must be filed within the time limits set by Fed.R.App.P. 4." The court further stated that "both we and the district court lack authority to extend the time prescribed by the Federal Rules of Appellate Procedure for filing a notice of appeal." *Id.* The

First and Seventh Circuits have applied a similar rationale to appeals from final judgments in admiralty proceedings. *Hanson*, 384 F.2d at 132 and *Feeder Line Towing Serv., Inc.*, 539 F.2d at 1108. We are persuaded by this rationale. We conclude it is equally applicable to a review of an interlocutory decree in admiralty.

The 15 day limitation set forth in section 2107 is in conflict with Rule 4(a)(1). Accordingly, pursuant to 28 U.S.C. § 2072, the requirement that a notice of appeal be filed within 15 days is no longer applicable to the review of an interlocutory decree in an admiralty proceeding. Because the Arkins filed their notice of appeal within 30 days of the order of the findings of fact and conclusions of law, this appeal was timely filed.

## II.

Sherman Lloyd Arkin was a passenger in an Avon class 14 foot rubber dinghy (hereinafter the Avon) operated by Dick when the collision occurred. The Avon was struck by an Invader class 16 foot fiberglass vessel (hereinafter Invader), operated by Roberts in Catalina Harbor, Catalina Island, Los Angeles County, California. At the time of the accident, Roberts worked for White Cloud aboard the Sapphire Sea II. White Cloud owned the Sapphire Sea II and the Invader, an item of equipment appurtenant thereto.

Prior to the collision, Roberts initiated a hard turn to port at a speed in excess of 35 MPH without observing that the Avon was travelling behind the Invader on a parallel course. At the moment of impact, the Invader's bow overrode the port side of the Avon, killing Sherman Lloyd Arkin and seriously injuring Dick.

On April 13, 1982, White Cloud filed a complaint in the United States District Court for the Central District of California for exoneration or limitation of liability (No. CV 82–1803–CBM). On June 8, 1982, the Arkins filed claims of damages for wrongful death against White Cloud (No. CV 82–1803–CBM). The Arkins filed a complaint against Dick for damages for wrongful death on June 20, 1984 (No. CV 84–4617–CBM). These matters were consolidated for trial.

On April 25, 1985, the district court entered findings of fact and conclusions of law on the consolidated matters. The court found that Roberts' negligent operation of the Invader and its unseaworthiness were the sole proximate cause of the collision. The court found that Roberts negligently operated the Invader for two reasons. First, Roberts failed to comply with the following steering and sailing rules:

One. Roberts neglected to take the precautions required by the ordinary practice of seamen under certain circumstances as required by Rule 2 of the International and Inland Navigational Rules, *see* 33 U.S.C. Foll. § 1602 (1982) (International), 33 U.S.C. § 2002 (1982) (Inland).

Two. Roberts failed to determine if a risk of collision existed due to the prevailing circumstances and conditions in violation of Rule 7 of the International and Inland Navigational Rules, *see* 33 U.S.C. Foll. § 1602 (International), 33 U.S.C. § 2007 (Inland).

Three. Roberts failed to alter course to starboard in a head on situation so that he would pass on the port side of the Avon to avoid a collision in violation of Rule 14 of the International and Inland Navigational Rules, *see* 33 U.S.C. Foll. § 1602 (International), 33 U.S.C. § 2014 (Inland).

Secondly, Roberts failed to maintain a proper lookout as required by Rule 5 of the International and Inland Navigation Rules. *See* 33 U.S.C. Foll. § 1602 (International), 33 U.S.C. § 2005 (Inland). Additionally, the court found that the Invader was unseaworthy on the day of the collision because it was manned by an incompetent and unlicensed master.

The Arkins filed an appeal on May 24, 1985, challenging Findings of Fact Numbers 10 and 16 which provides as follows:

10. The negligent operation of the Invader runabout by Roberts and the unseaworthiness of the Invader were the sole proximate cause of the collision.

Roberts initiated a hard left turn of his boat at a speed in excess of 35 MPH, without observing that the Avon, operated by Claimant Alvin Dick and in which decedent S. Lloyd Arkin was a passenger, was in the path of the turn of the Invader.

. . . .

16. Alvin Dick was not negligent in the operation of the involved Avon dinghy.

## III.

The Arkins contend that there was not substantial evidence to sustain the district court's finding that the unseaworthiness and negligent operation of the Invader were the sole proximate cause of the collision. We disagree.

The testimony of the witnesses Thomas Mentor Ward (hereinafter Ward), Everett Joseph Draper (hereinafter Draper), and Dr. Maxwell Cheung (hereinafter Dr. Cheung) provided substantial evidence to support a finding that Roberts was negligent and that said negligence proximately caused the collision.

■ Findings of fact made by admiralty trial courts are subject to the clearly erroneous standard of review. *Seattle-First Nat'l Bank v. Bluewater Partnership*, 772 F.2d 565, 568 (9th Cir.1985); *Alkmeon Naviera S.A. v. M/V Marina L*, 633 F.2d 789, 796 (9th Cir.1980). This standard also extends, under comparative negligence principles, to an admiralty court's apportionment of fault. *Alkmeon*, 633 F.2d at 796. Under clearly erroneous standard, we must affirm an apportionment of liability unless, after a review of all the evidence, we are left with a "definite and firm conviction that a mistake has been committed." *Id.*, (citing *United States v. Standard Oil Co.*, 495 F.2d 911, 916 (9th Cir. 1974) (quoting *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 7, 99 L.Ed. 20 (1954))). We are left with no such conviction here.

The district court found that Roberts initiated a hard left turn at a speed in excess of 35 MPH without observing that the

Avon was in the path of his vessel, and that Roberts' negligence was the sole proximate cause of the collision. The evidence at trial supports the findings of the district court.

Ward, a witness qualified as an expert in marine engineering, investigated other Avon and Invader class vessels, for turning characteristics and speed. Ward reconstructed the courses of the two vessels based upon Roberts' testimony, the Coast Guard's report of the collision, the deposition of the principal stockholder of White Cloud, and the sheriff's report. Based on Robert's testimony, Ward estimated that the Invader was travelling at 35 MPH. Ward concluded that within five seconds, a safe situation involving two speedboats going in the same direction resulted in a collision when the Invader made a 180° turn to the left.

Ward testified that the operator of the Avon would not have been able to recognize that the Invader was going to make a turn until two seconds before impact. Ward also testified, based on his investigation of the speed and turning characteristics of the Avon, that a two second delay exists from the time you turn the wheel until the time the course begins to change. Accordingly, Dick did not have time to maneuver the Avon out of the path of the Invader. Ward also testified that Roberts' sudden left turn was the proximate cause of the collision.

Draper, a navigation expert witness and a member of the United States Coast Guard Auxiliary, testified that the Navigational Rules applied to the operation of the Avon and Invader prior to the collision. Rules 1 through 38 of the International Regulations for Preventing Collisions at Sea, 33 U.S.C. Foll. § 1602 (1982 & Supp. III 1985); and the Inland Navigational Rules, 33 U.S.C. §§ 2001–2073 (1982 & Supp. III 1985). Draper based his opinion of the cause of the collision on Ward's reconstruction of the courses of the two vessels leading up to the point of impact. Draper testified that it was his opinion that the Invader was at fault because prior to the turn, Roberts had not looked to the

port side to see the Avon approaching. Once in the turn, Roberts was in a position to have a good view of the Avon and should have maintained a straight line to have a safe crossing or altered course to starboard to get away from the danger zone of a head on situation. Rule 14 of the International Regulations for Preventing Collisions at Sea, 33 U.S.C. Foll. § 1602; and Inland Navigational Rules, 33 U.S.C. § 2014.

Draper also testified that a Coast Guard regulation requires the master of a vessel over 65 feet, or a charter vessel, to have an ocean operator's license. Roberts did not have a license. The Sapphire Sea II is 86 feet in length. The Invader, an item of equipment appurtenant to the Sapphire Sea II, is 16 feet in length. Roberts operated both the Sapphire Sea II and the Invader.

■ Draper's testimony provided substantial evidence that Roberts violated Coast Guard Regulations in failing to obtain an operator's license and in making a turn to port in violation of the rules of the road. The court therefore found that Roberts violated 46 U.S.C. § 1461(d) (1982) by using the Invader "in a negligent manner as to endanger the life, limb and property" of the passengers of the Avon. When a ship at the time of a collision is in violation of a *statutory* rule intended to prevent collisions it is reasonable to presume that such dereliction is the sole or contributory cause of the accident, *Complaint of McLinn*, 744 F.2d 677, 684 n. 3 (9th Cir. 1984) (citing *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136, 22 L.Ed. 148 (1873)). Under the rule of *The Pennsylvania*, the burden shifts to the violator to prove that he could not have caused the collision where a statutory violation is shown. *Id.*

■ The Arkins assert that Dick violated Rule 5 of the International and Inland Navigational Rules by failing to maintain a proper lookout by sight and hearing. *See* 33 U.S.C. Foll. § 1602 (International); 33 U.S.C. § 2005 (Inland). The Arkins argue that Dick had the burden of producing evidence to show not only that such violation did not, but that it could not have, contributed to the injury. This argument lacks

merit because the lookout rule is not a *statutory* requirement within the purview of *The Pennsylvania* rule which would shift the burden of proof. *Marport, Inc. v. Stabbert & Assocs., Inc.*, 771 F.2d 1216, 1218 n. 2 (9th Cir.1985) (citing *Anthony v. Int'l Paper Co.*, 289 F.2d 574, 581 (4th Cir.1961)).

■ Based on the testimony presented by Ward and Draper, the district court's determination that Roberts' conduct was the proximate cause of the collision was not clearly erroneous. Roberts himself testified that he was travelling at the speed of 35 MPH. There is substantial evidence in the record to show that Roberts initiated a hard port turn in violation of the Rules of the Road. Roberts failed to produce evidence that his violations of the Navigational Rules did not proximately cause the collision.

### IV.

The Arkins also argue that the district court's finding that Dick was not negligent was clearly erroneous. We disagree.

■ A district court's determination concerning negligence is a finding of fact. *United States v. McConney*, 728 F.2d 1195, 1204 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). Findings of fact are reviewed under the clearly erroneous standard. *Id.* at 1202–04.

■ Dr. Cheung, a naval architect, testified that the angle of impact at the point of collision was approximately 90. Ward based the position of the vessels at impact on Dr. Cheung's testimony.

Ward testified that four seconds before the collision the operator of the Avon would not have seen a risk of collision, but he would have seen it as a crossing situation. Rule 15 of the International Regulations for Preventing Collisions at Sea, 33 U.S.C. Foll. § 1602 and Inland Navigational Rules, 33 U.S.C. § 2015 each provide that "[w]hen two power-driven vessels are crossing so as to involve risk of collision, the vessel which has the other on her star-

board side shall keep out of the way and shall, if the circumstances admit, avoid crossing ahead of the other vessel." In this crossing situation, the Avon had the Invader on her starboard side and, thus, had the responsibility to keep out of the Invader's way and avoid crossing ahead of her. The Avon clearly would not have crossed ahead of the Invader if the vessels had maintained their courses and speed. Therefore, the Avon had no duty to make any defensive or safety maneuvers.

Based on the facts presented to him, Ward testified that in his opinion the operator of the Avon would have seen the Invader three seconds before impact and assume it was going to pass well ahead of him. Two seconds before the collision, the operator of the Avon would have first realized that the Invader was going to make a turn. Ward testified that in his experience, a prudent boat operator on the Avon would do something at that time to diminish the risk of collision. Ward concluded, based on the angle of collision at impact, that the operator of the Avon turned his wheel to starboard one or two seconds before impact.

Based on Ward's examination of the courses of the two vessels, Draper testified that Dick exercised ordinary and reasonable care by turning to starboard. Rule 14(a) in both the International and Inland Navigational Rules require an evasive turn to starboard in a head on situation. *See* 33 U.S.C. Foll. § 1602 (International); 33 U.S.C. § 2014(a) (Inland). Draper further testified a prudent operator, under the circumstances presented here, would have commenced the starboard turn two or three seconds before impact. Given the two second delay necessary to execute a turn, a starboard turn by the Avon would place her in the position indicated on Ward's diagram.

The evidence presented by Ward and Draper demonstrates that the district court's conclusion that Dick was not negligent in the operation of the Avon was not clearly erroneous. The district court's interlocutory decree is AFFIRMED.