69 F.3d 381
 1995 Copr.L.Dec. P 27,461, 36 U.S.P.Q.2d 1654,
95 Cal. Daily Op. Serv. 8503,
95 Daily Journal D.A.R. 14,671
 ALLARCOM PAY TELEVISION, LTD., a Canadian corp., Plaintiff-Appellant,
v.
GENERAL INSTRUMENT CORP., a Delaware corp.; Cable Home
Communication Corp., a Delaware Corp.; Showtime
Networks, Inc., a Delaware corp.,
Defendants-Appellees.
 No. 93-56222.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 6, 1995.
Decided Nov. 2, 1995.
 
 Jean P. Nogues and Stephen D. Marks, Mitchell, Silberberg & Knupp, Los Angeles, California, for plaintiff-appellant.
 Michael G. Ermer, Irell & Manella, Newport Beach, California, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before: BRUNETTI and KOZINSKI, Circuit Judges, and SHADUR,* Senior District Judge.
 BRUNETTI, Circuit Judge:
 
 
 1
 Allarcom Pay Television, Ltd. appeals from two orders of the district court dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), its Federal Communication Act (FCA) claims and its various California state law claims against General Instrument Corporation and Showtime Networks, Inc. We have jurisdiction under 28 U.S.C. Sec. 1291. We affirm the dismissal of the FCA claims and reverse the dismissal of the state law claims.
 
 FACTS AND PROCEEDINGS BELOW
 
 2
 In July 1992, Allarcom filed a complaint in federal district court against Showtime, General Instrument, and another defendant not party to this appeal. That complaint alleged the following facts. Allarcom is authorized by the Canadian government to be the exclusive provider of English-language subscription television (STV) programming in Western Canada. Allarcom has obtained the exclusive right from producers such as MCA, Paramount, Touchstone, etc. to exhibit their motion pictures on STV in Allarcom's territory. Allarcom transmits its signal to local cable television companies and other authorized receivers who pay for the service.
 
 
 3
 Showtime has the right to exhibit many of the same pictures on its STV service in the United States, but has no such license to exhibit those pictures in Canada. Showtime transmits its programming by means of satellite to authorized receivers. The "footprint" of that satellite signal allows it to be received in Allarcom's territory.
 
 
 4
 General Instrument manufactures and sells the "VideoCipher II" system (VC II), which scrambles and descrambles satellite television signals, thereby allowing the broadcaster to protect those signals from unauthorized reception. Many programmers, including Showtime, use the VC II to transmit their signal to customers in the United States. Various programmers, such as CNN, who are so authorized under Canadian law, use the VC II to transmit their signal to customers in Canada. Accordingly, the VC II has a legitimate use in Canada.
 
 
 5
 One of the elements of the VC II is a decoder device that enables its holder to receive and descramble STV programs. A person can alter that decoder so that it will unscramble signals that the holder is not authorized to receive.
 
 
 6
 According to the complaint, General Instrument and Showtime knew that compromised VC II decoders were being sold and used extensively in Allarcom's territory to receive unauthorized STV signals, including Showtime's signal. This practice nullified Allarcom's exclusive rights in that territory and deprived Allarcom of potential customers and income. Despite such knowledge, General Instrument and Showtime continued to use and promote the VC II system. Furthermore, General Instrument, through its dealers and with Showtime's knowledge, continued to sell VC II decoders in the US and Canada in numbers far in excess of any authorized users and to people whom it knew or had reason to know were using the decoders for the purpose of receiving American STV programming in Allarcom's territory. Defendants profited from this conduct.
 
 
 7
 Allarcom's complaint alleged that by this conduct, General Instrument and Showtime had assisted persons in receiving communications to which they were not entitled, in violation of the FCA, 47 U.S.C. Sec. 605(a). The complaint also alleged that General Instrument had manufactured and distributed devices knowing or having reason to know that the devices were primarily of assistance in the unauthorized decryption of satellite cable programming, in violation of the FCA, 47 U.S.C. Sec. 605(e)(4). The complaint also alleged a copyright infringement claim and various California state law claims. As relief, Allarcom requested compensatory and statutory damages. It also requested that the court require General Instrument to recall all VC II decoders, that it permanently enjoin defendants from manufacturing and distributing the VC II in its current form, and that it enjoin them from distributing any decoding device in excess of the legitimate uses therefor.
 
 
 8
 In December 1992, the district court concluded that the complaint did not state a claim under Sec. 605 upon which relief could be granted, and dismissed the FCA claim without leave to amend pursuant to Fed.R.Civ.P. 12(b)(6). The court also dismissed Allarcom's copyright infringement claim and most of its state law claims with leave to amend.
 
 
 9
 In January 1993, Allarcom filed a first amended complaint alleging only state law claims. On the basis of factual allegations similar to those in the original complaint, it claimed that General Instrument and Showtime had engaged in unfair competition, interference with contract, and interference with prospective economic advantage. In July 1993, the district court dismissed the amended complaint without leave to amend, concluding that both the FCA and the Federal Copyright Act preempted Allarcom's state law claims.
 
 
 10
 Allarcom timely appeals from both dismissals.
 
 STANDARD OF REVIEW
 
 11
 We review de novo a dismissal for failure to state a claim. Everest and Jennings, Inc. v. American Motorists Ins. Co., 23 F.3d 226, 228 (9th Cir.1994). We limit our review to the contents of the complaint[1] and assume that all allegations of material fact are true. Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 599, 121 L.Ed.2d 536 (1992).
 
 FEDERAL COMMUNICATIONS ACT CLAIM
 A. Showtime
 
 12
 Allarcom claims that Showtime "assisted" the piracy of satellite programming by people in Western Canada, in violation of the FCA, 47 U.S.C. Sec. 605(a), by helping those people steal its own STV broadcasts. We conclude that this allegation does not state a claim under the FCA.
 
 
 13
 Sec. 605(a) provides, in pertinent part,
 
 
 14
 No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
 
 
 15
 In other words, Sec. 605(a) prohibits a person not entitled to a signal from assisting another's piracy of that signal. Showtime owns its own signal, and is therefore entitled to that signal and does not fall within the subsection's prohibition.
 
 
 16
 Nor can Allarcom rely upon 47 U.S.C. Sec. 605(e)(4) to support its FCA claim. That section provides, in pertinent part,
 
 
 17
 Any person who manufactures, assembles, modifies, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or is intended for any other activity prohibited by subsection (a) of this section, shall be fined....
 
 
 18
 Even if we assume that the VC II decoder is a device described in this section, Allarcom has not alleged that Showtime "manufactures, assembles, modifies, imports, exports, sells, or distributes" that device.
 
 
 19
 Therefore, Allarcom has not stated a claim against Showtime under the FCA. While some other source of law, such as the Canadian law governing Allarcom's exclusive license, may proscribe Showtime's use of its own signal, the FCA does not.
 
 B. General Instrument
 
 20
 Allarcom also claims that General Instrument violated Sec. 605(a) and Sec. 605(e)(4) by distributing VC II decoders. We conclude that Allarcom has not alleged facts sufficient to demonstrate that General Instrument distributed the VC II knowing or having reason to know that it is "primarily of assistance in the unauthorized decryption of satellite cable programming...." 47 U.S.C. Sec. 605(e)(4).
 
 
 21
 General Instrument and Showtime rely upon Shenango Cable TV, Inc. v. Tandy Corp., 631 F.Supp. 835 (W.D.Pa.1986), to argue that Sec. 605(e)(4) prohibits only the distribution of devices designed solely, intentionally and specifically for pirating programming. Id. at 837-39. In 1988, after Shenango was decided, Congress amended that subsection by adding language that prohibited distributing a device while "knowing or having reason to know" that the device is "primarily of assistance" in piracy. Therefore, Shenango does not interpret the operative statutory language in this case, and is therefore not relevant to our analysis.
 
 
 22
 We begin by making clear that the VC II decoder distributed by General Instrument is not capable of pirating satellite broadcasts. That decoder is capable of piracy only if it has been modified. Allarcom has not alleged that General Instrument has ever sold any modified VC II decoders. Cf. United States v. Davis, 978 F.2d 415 (8th Cir.1992) (upholding a conviction for modification and sale of modified VC II decoders).
 
 
 23
 Allarcom's allegation that General Instrument sells VC II decoders knowing that others modify some or even many of those decoders does not state a claim under Sec. 605(e)(4). When Congress amended Sec. 605(e)(4) in 1988, it identified the VC II as "the industry's de factor [sic] standard" for preventing the pirating of satellite broadcasts. H.R.Rep. No. 887, 100th Cong.2d Sess., pt. 2, at 14-15, 28 (1988), reprinted in, 1988 U.S.C.A.A.N. 5638, 5642-43, 5657. See also United States v. Lande, 968 F.2d 907, 908 (9th Cir.1992) (recognizing same), cert. denied, --- U.S. ----, 113 S.Ct. 1299, 122 L.Ed.2d 689 (1993). We reject Allarcom's claim that the anti-piracy device adopted by the STV industry, which has the most acute interest in protecting its broadcasts, is also "primarily of assistance" in piracy, simply because some modify it to accomplish piracy. Indeed, the VC II is useful for piracy only because so much of the STV industry employs it to prevent piracy. Therefore, sale of that product in Canada and the United States, where many people indisputably use it legitimately, does not violate the FCA, and the district court properly dismissed the FCA claim against General Instrument.
 
 STATE LAW CLAIMS
 A. Federal Communications Law Preemption
 
 24
 Showtime and General Instrument contend that the FCA, 47 U.S.C. Sec. 556(c), expressly preempts Allarcom's state law claims, or, in the alternative, that Federal Communications law implicitly preempts those claims. We reject this argument.
 
 
 25
 47 U.S.C. Sec. 556(c), entitled "Preemption," states:
 
 
 26
 Except as provided in section 557 of this title [a section not relevant to this appeal], any provision of law of any State ... which is inconsistent with this chapter shall be deemed to be preempted and superseded.
 
 
 27
 "[T]his chapter" includes Sec. 605. Sec. 605(e)(6) states:
 
 
 28
 Nothing in this subsection shall prevent any State ... from enacting or enforcing any laws with respect to the ... distribution of equipment by any person with the intent of its use to assist in the interception or receipt of radio communications prohibited by subsection (a) of this section.
 
 In addition, Sec. 605(f)(first) states:
 
 29
 Nothing in this section shall affect any right, obligation, or liability under ... any other applicable Federal, State, or local law.
 
 
 30
 These provisions allow states to enact laws that impose obligations that are the same as or in addition to those imposed by the FCA, so long as those obligations are not contrary to rights or obligations contained in the FCA. The legislative history supports this interpretation. Senator Robert Packwood stated that under Sec. 605(e)(6), state laws concerning the distribution of equipment "now in effect or adopted in the future, which are consistent with, or afford greater protection than this subsection, shall not be affected." (Statement of Senator Robert W. Packwood, Chairman of the Committee on Commerce, Science, and Transportation, on the House Amendments to S. 66, 130 Cong.Rec. S14286 (Oct. 11, 1984), reprinted in 1984 U.S.C.A.A.N. 4742, 4751 (emphasis added)). In addition, the House Energy and Commerce Committee Report description of Sec. 556(c) provides an example of a preempted state law that supports our interpretation: The FCA requires that states impose obligations on cable operators only in franchise agreements. A state law that imposes such an obligation by means other than placing it in franchise agreements would be preempted. H.R.Rep. No. 934, 98th Cong., 2d Sess. 94 (1984), reprinted in 1984 U.S.C.A.A.N. 4655, 4731.
 
 
 31
 The obligations imposed under state law causes of action for unfair competition, interference with contract, and interference with prospective economic advantage are in addition to FCA obligations. Allarcom has pointed to no obligation imposed under these causes of action that is contrary to any right or obligation contained in the FCA, and therefore Sec. 566(c) does not expressly preempt those claims.
 
 
 32
 Showtime and General Instrument also argue that federal law implicitly preempts Allarcom's state law claims. A federal statute implicitly preempts state law when the scope of that statute indicates that Congress intended federal law to occupy a field exclusively, when it is impossible for a party to comply with both federal and state requirements, or when state law creates an obstacle to accomplishment of congressional objectives. Freightliner Corp. v. Myrick, --- U.S. ----, ----, 115 S.Ct. 1483, 1487, 131 L.Ed.2d 385 (1995).
 
 
 33
 While the inclusion of an express preemption provision in a statute does not by itself obviate implied preemption, id. at 1487-88, in this case, the express preemption provisions quoted above, and the analysis that those provisions call for, make clear that Allarcom's state law claims are not implicitly preempted. First, the savings clauses contained in Sec. 605(e)(6) and Sec. 605(f) (first) both expressly preserve state communications law, thereby indicating that Congress did not intend to occupy the entire field. Secondly, Showtime and General Instrument have not argued that they cannot comply with both federal and state law contemporaneously. Finally, our conclusion that the state law at issue here imposes no obligations inconsistent with the FCA (and thus is not expressly preempted) also indicates that state law would not frustrate any congressional objective. Accordingly, federal communications law does not preempt Allarcom's state law claims.
 
 B. Federal Copyright Law Preemption
 
 34
 The Federal Copyright Act preempts certain state causes of action. 17 U.S.C. Sec. 301. However, federal copyright law does not apply to extraterritorial acts of infringement. Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1095-98 (9th Cir.1994) (en banc). Accordingly, it does not preempt causes of action premised upon possible extraterritorial infringement.
 
 
 35
 In this case, the district court concluded that if part of an act of infringement begins in the United States, and is completed in a foreign jurisdiction, or if a person in the United States authorizes an infringement that takes place in a foreign jurisdiction, then U.S. copyright law applies. The court concluded that Allarcom's state claims were premised upon possible infringement under either or both of these theories, and were therefore preempted by the Copyright Act.
 
 
 36
 After the district court rendered its decision, an en banc panel of this court rejected these theories on the applicability of U.S. copyright law. We held that in order for U.S. copyright law to apply, at least one alleged infringement must be completed entirely within the United States, and that mere authorization of extraterritorial infringement was not a completed act of infringement in the United States. Subafilms, 24 F.3d at 1094, 1098. In this case, defendants either initiated a potential infringement in the United States by broadcasting the Showtime signal, which contained copyrighted material, or defendants authorized people in Canada to engage in infringement. In either case, the potential infringement was only completed in Canada once the signal was received and viewed. Accordingly, U.S. copyright law did not apply, and therefore did not preempt Allarcom's state law claims.
 
 CONCLUSION
 
 37
 The district court properly determined that Allarcom failed to state a claim under the Federal Communications Act, 47 U.S.C. Sec. 605, against Showtime and General Instrument. However, the district court erred by concluding that Allarcom's various state law claims were preempted by federal communications law or by federal copyright law. We remand for further proceedings consistent with this opinion.
 
 
 38
 Each party shall bear its own costs on appeal.
 
 
 39
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 Milton I. Shadur, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 [1]
 To whatever extent Allarcom now relies upon factual allegations in its first amended complaint to support its FCA claim, that reliance is misplaced. For purposes of determining whether it stated an FCA claim, we consider only the factual allegations in the original complaint, which actually alleged the FCA claim, not the first amended complaint, which did not