149 F.3d 987
 1998 Copr.L.Dec. P 27,805, 47 U.S.P.Q.2d 1349,
26 Media L. Rep. 2001, 98 Cal. Daily Op. Serv. 5462,
98 Cal. Daily Op. Serv. 6601,
98 Cal. Daily Op. Serv. 7627,
98 Daily Journal D.A.R. 9139
 LOS ANGELES NEWS SERVICE, Plaintiff-Appellant,
v.
REUTERS TELEVISION INTERNATIONAL, LIMITED; Visnews
International (USA), Limited; Reuters America
Holdings, Inc.; Reuters America, Inc.,
Defendants-Appellees.
LA NEWS SERVICE, Plaintiff-Appellee,
v.
REUTERS TELEVISION INTERNATIONAL, LIMITED; Visnews
International (USA), Limited; Reuters America
Holdings, Inc.; Reuters America, Inc.,
Defendants-Appellants.
 Nos. 97-55113, 97-55114.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 4, 1998.
Decided July 13, 1998.
As Amended on Denial of Rehearing and Suggestion for
Rehearing En Banc Aug. 25, 1998.
 
 1
 William A. Bergen, Law Offices of William A. Bergen, Auburn, CA, for plaintiff/appellant/cross-appellee.
 
 
 2
 Louis P. Petrich, Leopold, Petrich & Smith, Los Angeles, CA, for defendants/appellees/cross-appellants.
 
 
 3
 Appeals from the United States District Court for the Central District of California; Kim McLane Wardlaw, District Judge, Presiding. D.C. No. CV-95-01073-KMW.
 
 
 4
 Before: CANBY and KLEINFELD, Circuit Judges, and SCHWARZER,* Senior District Judge.
 
 SCHWARZER, Senior District Judge:
 
 5
 On this appeal we must decide whether, under the Copyright Act, a plaintiff may recover actual damages accruing from the unauthorized exploitation abroad of copyrighted work infringed in the United States; whether defendants' exploitation of the work was protected as fair use; and whether the district court erred in its award of statutory damages.
 
 BACKGROUND
 
 6
 Los Angeles News (LANS) is an independent news organization which produces video and audio tape recordings of newsworthy events and licenses them for profit. During the April 1992 riots following the Rodney King verdict, LANS covered the events at Florence Avenue and Normandie Boulevard in Los Angeles from its helicopter, producing two videotapes: "The Beating of Reginald Denny" and "Beating of Man in White Panel Truck" (the works). LANS copyrighted these works and licensed them to National Broadcasting Company, Inc. (NBC), which used them on the Today show with the logo of KCOP, a Los Angeles station not affiliated with NBC, superimposed (known in the trade as the downstream). Under the agreement, LANS retained ownership of the works and the right to license them.
 
 
 7
 The Reuters defendants (Reuters Television International, Ltd., Reuters America Holdings, Inc., and Reuters America, Inc., collectively Reuters) are television news agencies that gather and provide audiovisual and other news material to their subscribers for an annual fee. Visnews International (USA), Ltd. (Visnews), a joint venture of Reuters Television Limited, NBC and the British Broadcasting Company, had a news supply agreement with NBC News Overseas. When NBC broadcast the Today show featuring the LANS footage to its affiliates, it simultaneously transmitted the show via fiber link to Visnews in New York. Visnews made a videotape copy of the works as broadcast and transmitted it to subscribers in Europe and Africa. It also transmitted copies of the videotape to the New York office of the European Broadcasting Union (EBU), which in turn made a videotape copy and transmitted it via satellite to Reuters' London branch, which provided copies to its subscribers.
 
 
 8
 LANS brought this action for copyright infringement against the Reuters defendants and Visnews. Defendants moved for summary judgment on several grounds. So far as relevant to this appeal, they contended that (1) extraterritorial infringement does not violate American copyright law, (2) the fair use doctrine precludes a finding of infringement, and (3) LANS had no evidence of actual damage. The district court granted defendants' motion with respect to extraterritorial infringement and the claim for actual damages.[1] It denied the motion with respect to the fair use defense and entered partial summary judgment for LANS determining that the defense did not shield defendants' actions. Following a bench trial on the remaining issues, the district court found that Visnews had infringed by making one copy of each videotape and contributing to the making by EBU of one copy of each tape, LANS failed to prove the infringement was willful, and defendants failed to prove that it was innocent. The court entered judgment for LANS for $60,000 in statutory damages based on the four domestic infringements by Visnews.[2] In a subsequent order, the court denied LANS's and Reuters' applications for costs and attorney's fees.
 
 
 9
 LANS appeals from the ruling barring extraterritorial damages and defendants cross-appeal from the ruling denying the fair use defense and from the damage award. Both appeal from the order denying attorney's fees and costs. We have jurisdiction pursuant to 28 U.S.C. § 1291.
 
 DISCUSSION
 I. EXTRATERRITORIAL DAMAGES
 
 10
 It is settled that the Copyright Act does not apply extraterritorially. Subafilms, Ltd. v. MGM-Pathe Communications Co., 24 F.3d 1088, 1094 (9th Cir.1994) (en banc). For the Act to apply, "at least one alleged infringement must be completed entirely within the United States." Allarcom Pay Television Ltd. v. General Instrument Corp., 69 F.3d 381, 387 (9th Cir.1995). The district court found that "any damages arising extraterritorially are the result of extraterritorial infringement." Reuters I, 942 F.Supp. at 1269. Relying on Allarcom, the court held that "[t]he transmissions from Visnews and [EBU] did not violate the Copyright Act.... Therefore, Defendants are not liable ... for damages arising extraterritorially." Id. at 1269. We review the district court's grant of partial summary judgment de novo. Amdahl Corp. v. Profit Freight Sys., Inc., 65 F.3d 144, 146 (9th Cir.1995).
 
 
 11
 The district court's ruling was premised on the assumption that LANS's claim was based on the transmissions from Visnews and EBU to Reuters. However, it also held that Visnews completed acts of infringement in the United States when it copied the works in New York and then transmitted them to EBU which also copied them in New York. Each act of copying constituted a completed act of infringement. See 17 U.S.C. § 106(1). It was only after these domestic acts of infringement had been completed that Visnews and EBU transmitted the works abroad.
 
 
 12
 This case then presents a situation different from that in Subafilms and Allarcom. In Subafilms, the allegedly infringing conduct consisted solely of authorization given within the United States for foreign distribution of infringing videocassettes. 24 F.3d at 1090 n. 3. Similarly, in Allarcom, the alleged infringement consisted either of authorization given in the United States for infringement in Canada or broadcasts of copyright material from the United States into Canada, with the infringement not completed until the signals were received in Canada. 69 F.3d at 387.
 
 
 13
 The issue before us-which the Subafilms court did not resolve-is whether LANS "may recover damages for international distribution of the [works] based on the theory that an act of direct infringement, in the form of a reproduction of the ... [works], took place in the United States." Subafilms, 24 F.3d at 1099; see also id. at 1094. While this circuit has not heretofore addressed the issue, the Second Circuit has done so in a line of cases beginning with Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 52 (2d Cir.1939), aff'd, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825 (1940). In Sheldon the court held, in an opinion by Judge Learned Hand, that plaintiff could recover the profits from exhibiting a motion picture abroad where the infringing copy had been made in the United States. As Judge Hand explained:
 
 
 14
 The [copyrighted film] negatives were "records" from which the work could be "reproduced", and it was a tort to make them in this country. The plaintiffs acquired an equitable interest in them as soon as they were made, which attached to any profits from their exploitation, whether in the form of money remitted to the United States, or of increase in the value of shares of foreign companies held by the defendants. We need not decide whether the law of those countries where the negatives were exploited, recognized the plaintiffs' equitable interest; we can assume arguendo that it did not, for, as soon as any of the profits so realized took the form of property whose situs was in the United States, our law seized upon them and impressed them with a constructive trust, whatever their form.
 
 
 15
 106 F.2d at 52. See also Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 73 (2d Cir.1988) (permitting recovery of copyright damages accruing abroad from illegal copying in the United States); Famous Music Corp. v. Seeco Records, Inc., 201 F.Supp. 560, 568-69 (S.D.N.Y.1961) (same). See also 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.05, at 14-96 (1996) (stating that copyright holders acquire an equitable interest in infringing works produced in the United States as soon as they come into being). Subafilms described these cases as being "based ... on the theory that the infringing use would have been actionable even if the subsequent foreign distribution that stemmed from that use never took place." 24 F.3d at 1094. Recovery of damages arising from overseas infringing uses was allowed because the predicate act of infringement occurring within the United States enabled further reproduction abroad.[3]
 
 
 16
 LANS urges us to adopt the Second Circuit's rule because the unauthorized copying of its works in the United States enabled further exploitation abroad. While the extraterritorial damages resulted from Reuters's overseas dissemination of the works received by satellite transmissions from Visnews and EBU, those transmissions were made possible by the infringing acts of copying in New York. The satellite transmissions, thus, were merely a means of shipping the unlicensed footage abroad for further dissemination.
 
 
 17
 The Subafilms court's concerns are inapplicable to the present case. The Second Circuit rule would not permit application of American law to "acts of infringement that take place entirely abroad." Subafilms, 24 F.3d at 1098. Nor would a copyright holder be entitled to recover extraterritorial damages unless the damages flowed from extraterritorial exploitation of an infringing act that occurred in the United States. In Subafilms, the court reasoned that liability based solely on the authorization of infringing acts "would produce the untenable anomaly, inconsistent with the general principles of third party liability, that a party could be held liable as an infringer for violating the 'authorization' right when the party that it authorized could not be considered an infringer under the Copyright Act." 24 F.3d at 1094; see also 3 Nimmer, supra, § 12.04[A][b], at 12-88 to 12-93 ("It is perverse to construe Congress' intention as holding liable a person who authorizes an activity that is perfectly legal abroad."). Under the Second Circuit's rule, by contrast, a party becomes liable for extraterritorial damages only when an act of infringement occurs within the United States, subjecting it to liability as an infringer (or a contributory infringer) under the Copyright Act. Cf. Robert Stigwood Group Ltd. v. O'Reilly, 530 F.2d 1096, 1100-01 (2d Cir.1976) (copyright holders cannot recover for unauthorized performances of copyrighted work in Canada merely because the performers may have assembled and arranged all necessary elements in the United States); De Bardossy v. Puski, 763 F.Supp. 1239 (S.D.N.Y.1991); Gaste v. Kaiserman, 683 F.Supp. 63, 65 (S.D.N.Y.1988), aff'd, 863 F.2d 1061 (2d Cir.1988); Ahbez v. Edwin H. Morris & Co. Inc., 548 F.Supp. 664, 667 (S.D.N.Y.1982).
 
 
 18
 Defendants' argument that adoption of the Second Circuit rule would permit plaintiffs to circumvent the statute of limitation by recovering damages for distribution abroad occurring many years after the infringing act in the United States is without merit. An action must be "commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A claim accrues when an act of infringement occurs, not when consequent damage is suffered. See Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir.1994). A plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims, regardless of where they may have been incurred.
 
 
 19
 We therefore hold that LANS is entitled to recover damages flowing from exploitation abroad of the domestic acts of infringement committed by defendants.
 
 II. FAIR USE
 A. Summary Judgment
 
 20
 Defendants moved for summary judgment on the basis of collateral estoppel, relying on the ruling of a district court in another case involving the same works but a different defendant.[4] Inasmuch as that ruling was reversed on appeal, that issue is moot. In its response to defendants' motion, LANS contended that fair use was inapplicable as a defense to the action. Defendants' reply memorandum did not address the fair use issue, nor did defendants object to the district court's treatment of LANS' response as a motion for partial summary judgment.[5] On appeal, defendants for the first time argue that triable issues existed precluding entry of partial summary judgment. Defendants cite our decision in Los Angeles News Service v. KCAL-TV Channel 9, 108 F.3d 1119 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 81, 139 L.Ed.2d 39 (1997), reversing summary judgment for defendant based on fair use. Defendants identify no triable issues, however, arising under the facts of this case. While KCAL involved the same works, it arose in a different context. Unlike the district court in KCAL, the court here made a thorough analysis of the evidence bearing on the relevant factors under § 107. Because there are no genuine issues of material fact and "the district court has found facts sufficient to evaluate each of the statutory factors, an appellate court need not remand for further fact finding but may conclude as a matter of law that the challenged use does not qualify as a fair use of the copyright work." Harper & Row Publishers, Inc. v. Nation Enter., 471 U.S. 539, 560, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985) (quoting Pacific & Southern Co. v. Duncan, 744 F.2d 1490, 1495 (11th Cir.1984)) (internal quotations and notations omitted); see also Los Angeles News Serv. v. Tullo, 973 F.2d 791, 796 (9th Cir.1992) ("Where the district court has found facts sufficient to evaluate each of the statutory factors considered in determining fair use, ... we may determine as a matter of law whether the challenged use is a fair one."); Fisher v. Dees, 794 F.2d 432, 436 (9th Cir.1986) (rejecting argument that fair use is appropriate for determination by summary judgment only when no reasonable jury could have decided the question differently).
 
 B. Merits
 
 21
 The district court rejected the fair use defense after finding that three of the § 107 factors favored LANS.[6] In substance, the court found the uses were commercial rather than nonprofit and not very transformative, that they took the "heart" of the work, and that allowing such uses "would result in a substantially adverse impact on the potential market for the original works." Reuters I, 942 F.Supp. at 1274.
 
 
 22
 We review a grant of summary judgment de novo. Ledo Fin. Corp. v. Summers, 122 F.3d 825, 827 (9th Cir.1997). "Fair use is a mixed question of law and fact," which we also review de novo. Harper & Row, 471 U.S. at 560, 105 S.Ct. 2218; Tullo, 973 F.2d at 796. In doing so, we must balance the nonexclusive factors set out in 17 U.S.C. § 107. Harper & Row, 471 U.S. at 549, 105 S.Ct. 2218.
 
 1. Purpose and Character of Use
 
 23
 Although defendants' service does have a news reporting purpose, its use of the works was not very transformative. Reuters copies footage and transmits it to news reporting organizations; Reuters does not explain the footage, edit the content of the footage, or include editorial comment. "Although such transformative use is not absolutely necessary for a finding of fair use, ... the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579, 114 S.Ct. 1164, 127 L.Ed.2d 500 (1994) (citations omitted).
 
 
 24
 Reuters used the works for a commercial purpose, providing the works to other news reporting organizations in exchange for an annual fee. While a commercial use does not by itself preclude a defense of fair use, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 451, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984). Further, "[t]he crux of the profit/non-profit distinction is ... whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." Harper & Row, 471 U.S. at 562, 105 S.Ct. 2218. LANS normally charges customers for the privilege of copying portions of its works. The district court did not err in finding that this factor weighed in favor of LANS.
 
 
 25
 Defendants argue that if a broadcaster's use of the works for news reporting may constitute fair use, then "it is obvious that the transmission of such Works to a broadcaster for such purpose cannot ... be deemed an infringement." The argument misses the point for it is not the transmission that is the infringement but the unauthorized copying of the works. Moreover, in Tullo, the court held that the defendant news clipping service-an organization that monitored news programs, recorded them on videotape, and sold copies to interested individuals-was not protected by the fair use defense. 973 F.2d at 799. The defendant, AVRS, argued that the first factor should weigh in its favor because its clients used the tapes for "research, scholarship and private study."[7] Id. at 797. The court held that "the ultimate use to which the customer puts the tape is irrelevant, as is the use AVRS's customers make of the tapes AVRS sells." Id. Thus, the question of whether defendants' copying and transmission of the works constitutes fair use is distinct from whether their subscribers' broadcasts of the works are fair use.
 
 2. Nature of Copyrighted Work
 
 26
 The works were factual and informational, see Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F.2d 1148, 1153-54 (9th Cir.1986), and had been published by LANS before their use by Reuters. See Harper & Row, 471 U.S. at 564, 105 S.Ct. 2218. The district court did not err in finding that this factor weighed in favor of defendants.
 
 
 27
 3. Amount and Substantiality of What Was Used
 
 
 28
 The district court found that this factor weighed in favor of LANS because even though Reuters used only a small portion of the works, it was taken from the "heart" of the works. See id. at 565-66, 105 S.Ct. 2218. The court noted that Visnews had copied footage from NBC's newscast, which had edited the LANS footage and selected the "heart" of it, and that Reuters presumably used footage from newscasts. Defendants do not contest this factor.
 
 4. Effect on Market
 
 29
 The district court correctly found that this factor weighed in favor of LANS. The court reasoned that although LANS could not prove loss of subsequent sales of the works, and hence actual adverse effect on the market for videotape footage, defendants' actions should not go unpunished. Such actions if permitted would result in a substantially adverse impact on the potential market for the original works. Reuters and LANS are in the business of providing audiovisual news material to reporting organizations. When such an organization buys footage from Reuters, it does not need to purchase it from LANS, thus lessening the market for LANS's footage. Defendants do not contest this factor.
 
 
 30
 In sum, the district court, having found that only one of the four statutory factors weighed in favor of defendants, correctly concluded that the fair use defense did not apply. See Tullo, 973 F.2d at 799 (holding fair use did not shield a defendant from liability when only one of the four statutory factors weighed in its favor).
 
 III. STATUTORY DAMAGES
 
 31
 Because we reverse the district court's ruling on extraterritorial damages and affirm its ruling on the fair use defense, we must remand for a new trial on actual damages. Accordingly, we conditionally vacate the award of statutory damages. LANS retains the right, however, to make an election before final judgment to recover statutory damages instead of actual damages and profits.[8] 17 U.S.C. § 504(c)(1). Should LANS elect statutory damages, the district court should reinstate its prior award. Against that eventuality, we will address defendants' cross-appeal challenging the statutory damages award.
 
 A. Innocent Infringement[9]
 
 32
 The district court found that defendants did not sustain their burden of proving that they were not aware and had no reason to believe that their acts constituted an infringement of copyright, and thus were not entitled to the reduction in statutory damages under § 504(c)(2). Whether the defendants' infringement was innocent is a factual determination which we review for clear error. See Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 515 (9th Cir.1985).
 
 
 33
 1. LANS's works were embedded in a licensed work
 
 
 34
 Defendants contend first that they had "no practicable alternative but to copy those portions of [LANS's] works which were embedded in a licensed work." But practicability is not a proxy for innocence. The argument does not sustain the burden of proving that Visnews "was not aware and had no reason to believe that [its] acts constituted an infringement." § 504(c)(2).
 
 
 35
 2. Defendants' awareness of limitations on use
 
 
 36
 Defendants contend that there was no evidence that Visnews accessed the NBC desk log to discover restrictions on the material, and that knowledge of the desk log entry would not have alerted Visnews that the Today show contained the works. Their arguments, however, do not address the ground on which the district court based its ruling.
 
 
 37
 The court agreed that there was no evidence that anyone at Visnews saw the log entry or that knowledge of the entry would have alerted Visnews that copying the NBC feed would violate LANS's copyrights. And it found that there was no direct evidence in the record as to the state of mind of the Visnews or EBU employees who made the infringing copies from the NBC and Visnews feeds.
 
 
 38
 The court also found, however, that it can be inferred that whoever at Visnews and EBU made the copies of the Today show knew that the feed contained "a downstream that credited KCOP for the production."[10] Reuters II, 942 F.Supp. at 1280. The downstream indicates that the portion of tape belongs to someone other than NBC and "could indicate that there were in fact restrictions on any further use of the copyrighted works, and lead a reasonable person to inquire whether copying the feed would infringe a copyright held by KCOP or by another." Id.
 
 
 39
 Defendants have the burden of proving that the infringement was innocent. See 17 U.S.C. § 504(c)(2). The district court's finding that they failed to meet their burden is not clearly erroneous.
 
 
 40
 B. Even Assuming No Innocent Infringement, the Award Was Excessive
 
 
 41
 Defendants argue, in the alternative, that the award was excessive because LANS licensed the works to the networks and others for lesser amounts and had even established a liquidated damage figure of $10,000 for un authorized use of the works.
 
 
 42
 The district court has "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir.1984) (citing L.A. Westermann Co. v. Dispatch Printing Co., 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499 (1919)). The court is guided by "what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like." Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir.1990) (quoting F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 232, 73 S.Ct. 222, 97 L.Ed. 276 (1952)). Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages "whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant," Harris, 734 F.2d at 1335, in order " 'to sanction and vindicate the statutory policy' of discouraging infringement." Peer Int'l Corp., 909 F.2d at 1337 (quoting Woolworth Co., 344 U.S. at 233, 73 S.Ct. 222).
 
 
 43
 The court found that although LANS charged the networks only $3,500 for the licenses, these licenses carried numerous restrictions and were of limited duration. Later licenses with various restrictions and durations brought from $5,000 to $6,500. LANS secured a total of $250,000 to $300,000 in license fees for the Reginald Denny tape and less for the other tape. LANS would have charged $250,000 for an unlimited domestic license for the works. The court also took into account the public benefit from such works and the need to encourage their creation. To this end, LANS "must be allowed to profit from them, without concern that expediency, exigent circumstances or the very nature of the fast-breaking news-gathering business will deprive [it] of potential profits from those works." Reuters II, 942 F.Supp. at 1283.
 
 
 44
 The district court "is in a better position than are we to determine appropriate damages." Harris, 734 F.2d at 1335; Peer Int'l Corp., 909 F.2d at 1337. Its determination of the amount of statutory damages was not clearly erroneous.
 
 
 45
 C. Visnews's Contributory Infringement by Providing EBU a Copy of the Works
 
 
 46
 Defendants also argue that the statutory penalties must be reduced by one-half because the district court erred in ruling that Visnews is liable for contributory infringement with respect to the copies made by EBU of the works Visnews transmitted to it. The district court did not abuse its discretion in ruling that defendants waived this issue, not having raised it until closing argument. Moreover, each side submitted proposed findings of fact and conclusions of law that calculated statutory damages on the basis of all four infringements. We will not take up an issue not properly raised below unless necessary to prevent manifest injustice. International Union of Bricklayers & Allied Craftsman Local Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985). Because defendants have failed to show exceptional circumstances explaining their default, see id., we need not address the issue.IV. DENIAL OF ATTORNEY FEES
 
 
 47
 The district court denied the applications for attorney's fees, concluding that "both parties prevailed on significant issues in the case and thus neither can be viewed to be the prevailing party." (Emphasis in the original.) Because we reverse the district court's ruling on extraterritorial damages and remand for a trial on actual damages, we must vacate the attorney's fees order without prejudice, of course, to further proceedings following trial.
 
 
 48
 LANS requests attorney's fees on appeal pursuant to 17 U.S.C. § 505. We conclude that fees are warranted inasmuch as it served the purposes of the Copyright Act for LANS to establish its right to extraterritorial damages and to defend its favorable ruling below on fair use. Fantasy, Inc. v. Fogerty, 94 F.3d 553, 561 (9th Cir.1996). We award LANS its costs and attorney's fees on appeal, the amount to be determined by the district court on remand.
 
 CONCLUSION
 
 49
 The district court's judgment is affirmed in part and reversed in part. We AFFIRM the court's ruling barring the fair use defense. We REVERSE the ruling barring the claim for extraterritorial damages and REMAND for a trial on actual damages, with directions that if LANS elects to recover actual damages, the award of statutory damages be vacated. If LANS elects to recover statutory damages, the present award shall stand. The ruling denying attorney's fees and costs is VACATED without prejudice to further proceedings upon entry of judgment. We award LANS its attorney's fees and costs on appeal, the amount of attorney's fees to be determined by the district court on remand.
 
 
 
 *
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 The district court considered only LANS's claims of domestic damages. See Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 942 F.Supp. 1265, 1274 n. 7 (C.D.Cal.1996) ("Reuters I")
 
 
 [2]
 The decision is reported at 942 F.Supp. 1275 (C.D.Cal.1996) ("Reuters II")
 
 
 [3]
 No other circuits appear to have addressed this issue
 
 
 [4]
 Defendants' collateral estoppel argument rested on the summary judgment granted by another district court to the defendant in Los Angeles News Service v. KCAL-TV Channel 9, later reversed by this court. 108 F.3d 1119 (9th Cir.1997), cert. denied, --- U.S. ----, 118 S.Ct. 81, 139 L.Ed.2d 39 (1997). Unlike the defendants in this case, KCAL was one of several Los Angeles television stations that broadcast the Reginald Denny tape after LANS had refused to grant a license. See id. at 1120
 
 
 [5]
 The procedure followed by the trial court was proper, see Portsmouth Square, Inc. v. Shareholders Protective Comm., 770 F.2d 866, 869 (9th Cir.1985), but does not bar defendants from arguing on appeal that triable issues precluded entry of partial summary judgment for LANS
 
 
 [6]
 § 107, provides in relevant part:
 Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work ... for purposes such as ... news reporting, ... is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include-
 (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
 (2) the nature of the copyrighted work;
 (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
 (4) the effect of the use upon the potential market for or value of the copyrighted work.
 
 
 [7]
 17 U.S.C. § 107 enumerates scholarship and research as fair uses
 
 
 [8]
 The district court, having ruled against LANS's claim for extraterritorial damages, also ruled that LANS failed "to meet its burden of proving actual [domestic] damages, so, at most it is entitled to statutory damages." Reuters I, 942 F.Supp. at 1275. Because LANS was foreclosed by these rulings from seeking actual damages, it had no opportunity to make the statutory election on damages. It is therefore not precluded from appealing the district court's ruling regarding actual damages. Compare Oboler v. Goldin, 714 F.2d 211, 212-13 (2d Cir.1983) (per curiam) (damages appealable where copyright holder failed to elect between statutory and actual damages prior to directed verdict), with Twin Peaks Prods., Inc. v. Publications Int'l, Ltd., 996 F.2d 1366, 1380 (2d Cir.1993) ("Once a plaintiff has elected statutory damages, it has given up the right to seek actual damages and may not renew that right on appeal by cross-appealing to seek an increase in actual damages."); see also Jordan v. Time, Inc., 111 F.3d 102, 104 (11th Cir.1997) (per curiam) (same)
 
 
 [9]
 Section 504(c)(2) provides in relevant part:
 (2) ... In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200....
 
 
 [10]
 Defendants do not attack this finding on appeal